MURPHY and others, Plaintiffs in error, vs. THE STATE, Defendant in error.

*December 1 — December 29, 1893.*

*Burglary by tramps: Criminal conspiracy: Evidence: Instructions.*

1. In a criminal case, the court having repeatedly charged the jury that, to justify a conviction, "no mere weight of evidence is sufficient unless it excludes all reasonable doubt," and that "the proof

of guilt must be inconsistent with any other rational supposition," it was not error to refuse to give an instruction to the effect that the defendants should not be convicted upon mere suspicion, especially as there was abundant undisputed evidence in the case tending to prove the guilt of all the defendants.

2. Defendants were vagrants and tramps, punishable under secs. 1543–1546, R. S., and sec. 1547d, S. & B. Ann. Stats., and had confederated together to continue their criminal career as such. Acting together as confederates they attempted to steal passage on a railway train, and refused to pay fare thereon. After being ejected from the train they continued together until late at night, when, being substantially together and acting in concert, three of them stole some chickens. An hour or two later a store about eighty rods distant was burglarized. After the store was robbed they remained substantially together, wandering through the country, until the next evening, when they were arrested in another county, and part of the property stolen from the store was found on one of them. When arrested they were sitting around a fire which they had lighted close to a railway track, and one of them was armed with a revolver. The carrying of the revolver, and probably also the building of the fire, was a criminal offense, in the commission of which they were all confederates. In an action against them for the burglary of the store, the above facts, being conclusively proven, are *held* to establish a conspiracy and confederacy between them to commit crimes of the same nature during the night the burglary was committed, and to justify an instruction that the fact that a part of the stolen property was in the possession of one of them might be considered in determining the guilt of the others.

ERROR to the Circuit Court for *Racine* County.

An information was duly filed in that court, charging that at Dover in said county, on the 19th day of October, 1892, in the night time, the plaintiffs in error broke and entered the store of one Anton Miller with intent to commit larceny, and did steal, take, and carry away therefrom certain specified goods and property of Miller, of the value of $250. The plaintiffs in error all pleaded not guilty to the charge in the information. A trial resulted in a verdict of guilty against all of them.

The testimony given on the trial is sufficient to have jus-

tified the jury in finding the following facts: During the forenoon of October 19, 1892, the five plaintiffs in error and another person were together at Kansasville, a station on the railway in the town of Dover, Racine county, three miles west of Union Grove on the same railway. These persons came to Kansasville together from the north, and remained loafing there together about two hours, and then left there together, going in the same direction from whence they came. About one fourth of a mile north of Kansasville, the road on which they left intersects an east and west road leading from Union Grove to Burlington, which is eight or ten miles west from Kansasville on the same railway. The plaintiffs in error went to Union Grove together, and laid in or under a haystack together, near the depot, until about 7 o'clock in the evening, when they climbed on a west-bound passenger train, but did not go into the coaches. They refused to pay fare, and were expelled from the train at Kansasville, and lounged about the place together during the evening. One of them borrowed a pail of Miller, and they had it filled at a saloon three or four times with beer, which they drank together. At about 10 o'clock, after the saloon was closed, they again went north together. Before leaving, one of them declared their intention to walk to Burlington that night, but the others were not present. When they reached the east and west road before mentioned, they went into the outbuildings of Mr. Collar, who resides at the junction of the two roads, and while there together, or in close proximity to each other, three of them struck matches and stole chickens of Mr. Collar from their roost. At midnight Mr. Miller was aroused by a noise made by a neighbor's dog, and, going to his store, which he had closed and locked two hours earlier, he found it had been broken open and the goods described in the information stolen therefrom.

The plaintiffs in error lay that night, or a part of it,

together in a haymow on what is known as the Laven place, west of Mr. Collar's, on the Burlington road, and left that neighborhood together early the next morning, going west. Of the property thus stolen from Miller's store, a bundle of stockings was found concealed in a stack on the Laven place (upon which no one resided), and a bag of shoes was found in a stack on a neighboring farm. The bag had Mr. Collar's name on it, and evidently belonged to him. On the evening of October 20th, the day following the night that the burglary was committed, the plaintiffs in error were found together at the crossing of two railroads,— the Kenosha & Rockford and Wisconsin Central,— near Silver Lake station on the Central, in the west part of Kenosha county, and were there arrested and searched. A pair of clippers and a razor, fully identified as part of Miller's stolen goods, were found on one of them. *Young*, upon whose person these articles were found, testified that he stole them from Miller's store when he borrowed the pail, but Miller testified to conditions and circumstances which, if they existed, rendered it impossible that *Young's* story could be true. When arrested, the plaintiffs in error were sitting by a fire they had lighted near the railroad track, and one of them was armed with a revolver. They testified on the trial as witnesses in their own behalf, and each denied any complicity in the burglary charged.

The court refused to give the following instructions, except as given in the general charge to the jury: "No jury should convict a person of crime upon mere suspicion, however strong, or simply because there is a preponderance of all of the evidence in the case against him, or simply because there is strong reason to suspect that he is guilty; but, before the jury can lawfully convict, they must be convinced of the defendant's guilt beyond all reasonable doubt."

Speaking of the circumstance that part of the stolen property was found upon *Young*, the court said to the

jury: "You may also consider it, in connection with all the other evidence, facts, and circumstances in the case, in determining the guilt of the other defendants."

The court denied a motion on behalf of the plaintiffs in error for a new trial, adjudged them guilty of the offense charged in the information, and sentenced them to various terms of imprisonment in the state prison. The following errors are assigned for a reversal of the judgment: "*First,* in refusing to instruct the jury against a conviction based upon suspicion, as requested by the defendants; *second,* in instructing the jury that they might consider the fact that the defendant *Young* had in his possession certain property taken from the store of Anton Miller, in determining the guilt of the other defendants; *third,* in refusing to set aside the verdict of the jury in said action, and to grant the defendants a new trial therein, for the reason that the evidence in said action was insufficient to warrant and sustain the verdict of guilty as against the defendants." These alleged errors are considered in their order in the following opinion.

For the plaintiffs in error the cause was submitted on a brief by *Thomas M. Kearney,* attorney for *Thomas Kennedy,* and *H. A. Cooper* and *Wallace Ingalls,* attorneys for *Jerry Murphy, Frank Rice, John Young,* and *James Crane.*

For the defendant in error the cause was submitted on the brief of the *Attorney General* and *J. M. Clancey,* Assistant Attorney General.

LYON, C. J.    1. Was it error to refuse to give the proposed instruction to the effect that the plaintiffs in error should not be convicted upon mere suspicion? The learned circuit judge instructed the jury that, to justify a conviction, " no mere weight of evidence is sufficient unless it excludes all reasonable doubt (not unreasonable) as to the guilt of any of the defendants. The proof of guilt must be

inconsistent with any other rational supposition." These
rules were repeated and enforced in other portions of the
charge.  We think the charge contains a correct statement
of the rules of evidence in criminal cases, and is the com-
plete equivalent of the proposed instruction, for it is evi-
dent that testimony which raises only a mere suspicion of
guilt is not, and in the nature of things cannot be, incon-
sistent with any other rational hypothesis.  A mere sus-
picion is  such because there is some reasonable hypothesis
against it.  Besides, under the proof, there seems to have
been no necessity for an express instruction that  the jury
must not convict on mere suspicion, for there is abundant
undisputed evidence in the case tending to prove the guilt of
all the plaintiffs in error.  This fact takes the case out of the
range of mere suspicion, and renders the question of inno-
cence or guilt one of fair and proper inference from facts
proved.  We conclude that the refusal to give the pro-
posed instruction except as given in the general charge was
not error.

2.  Was it error to instruct the jury that the finding of a
part of the stolen property in possession of one of the
plaintiffs in error was a circumstance to be considered by
the jury, with all the other facts and circumstances proved
in the case, in determining the guilt of the other plaintiffs
in error?  The argument, if we understand it correctly, is
that it was incumbent on the prosecution to establish an
existing conspiracy or confederacy between the plaintiffs
in error to commit crime, before the fact that part of the
stolen property was found on one of them could properly
be received as evidence against the others.  We understand
this to be a correct statement of the rule of evidence.   At
any rate, we assume it to be correct for the purposes of
this case.  The court did not submit to the jury the ques-
tion of such conspiracy or confederacy between the plaint-
iffs in error.  Hence it would seem that unless the same

was conclusively proved on the trial the instruction under consideration was erroneous. The question is, therefore, Was the existence of such conspiracy or confederation conclusively proved?

When the offense charged in the information was committed, and immediately before and after that time, none of the plaintiffs in error had any visible means to maintain himself, and each of them was an idle person living without employment. Each was wandering about, and living in outhouses and barns, and in the open air, and failed to give a good account of himself. Each of them was, therefore, a vagrant, and vagrancy is a crime punishable by imprisonment. R. S. secs. 1543–1546. As such vagrants, they associated and confederated together to continue their criminal career. All of them were adults, and in the execution of such criminal purpose they wandered together into the village of Kansasville, of which village none of them were residents, and none of them were called there on any lawful business or for any lawful purpose. Thus, they were tramps, as well as vagrants, and it is also a crime to be a tramp. S. & B. Ann. Stats. sec. 1547d. These crimes they conspired and confederated together to commit. Acting together as confederates, they attempted to steal a passage on a railway train from Union Grove to Burlington without paying fare, and after boarding the train they refused to pay fare. This was an unlawful, if not a criminal, act, and they were joint trespassers on the train. After being ejected from the train at Kansasville they continued together their criminal career as vagrants and tramps until late at night, when they went to Mr. Collar's place, and, when substantially together and acting in concert, three of them committed the crime of larceny by stealing Mr. Collar's fowls. In the commission of this crime they are also chargeable as confederates. This brings the joint career of the plaintiffs in error down to within less than two

hours (probably within an hour) of the time Miller's store was broken, entered, and robbed, and leaves them within eighty rods of the store. After the store was robbed they remained substantially together, wandering through the country to the west and southwest, until they were arrested the next evening in another county, and part of the property stolen from the store was found on one of them. When arrested they were sitting around a fire they had lighted close to the railroad track. One of the party was armed with a revolver. The carrying of a revolver by a tramp, and probably the building of the fire, were also criminal offenses, made such by said sec. 1547d, subd. 4, in the commission of which all the plaintiffs in error were confederates.

The proof of most of the above facts is undisputed, and the proof of all of them is so overwhelming that the trial court was abundantly justified in regarding them as verities in the case. The crime charged in the information is one against property. It requires no argument or citation of authorities to demonstrate that the evidence sufficiently establishes the conspiracy and confederacy between the plaintiffs in error to commit crimes of the same nature during the night the offense charged in the information was committed, and to justify the giving of the instruction under consideration, without submitting to the jury the question of the existence of such conspiracy and confederacy.

3. The remaining error assigned, which is to the effect that a new trial should have been granted for insufficiency of proof, is fully answered by what has already been said. We conclude that the testimony is sufficient to sustain the conviction of all the plaintiffs in error.

*By the Court.*— The judgment of the circuit court is affirmed.