### WILLSMAN et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. February 3, 1923.)

#### No. 5711.

1. **Poisons ⚖══9—Rule abettor is principal does not apply to possession as evidence of purchase.**

    The fact that the evidence would show that defendant was in law a principal in making a sale of narcotics, which were in the possession of a confederate, because he aided and abetted the confederate in making the sale, does not establish that the confederate's possssession was the possession of defendant, so as to create the statutory presumption that he had unlawfully purchased.

2. **Poisons ⚖══9—Possession, to be incriminating, must be personal and exclusive.**

    The general rule is that possession, to be incriminating, must be personal and exclusive.

⚖══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Poisons ⬤⇒9—Possession of morphine by confederate is sufficient to show unlawful purchase.**

Under Harrison Anti-Narcotic Act, § 1, as amended by Act Feb. 24, 1919, § 1006 (Comp. St. Ann. Supp. 1919, § 6287g), making unlawful possession of narcotics prima facie evidence of unlawful purchase, the possession of a confederate or partner of defendant in the business of unlawfully selling narcotics would be the possession of defendant.

**4. Poisons ⬤⇒9—Evidence held not to establish possession from which purchase could be inferred.**

Evidence that defendant, when asked by a government witness for morphine for a friend of defendant's, took the witness to another, by whom the morphine was delivered to the witness, and that defendant then directed the witness to pay the money therefor to the other, is as consistent with the theory that defendant was merely a go-between, endeavoring to secure the drug for his friend, as that he was a confederate of the other in making the sale, and therefore insufficient to warrant the jury in finding unlawful possession by defendant, which, under the statute, was sufficient prima facie to show an unlawful purchase by him.

**5. Criminal law ⬤⇒562—Evidence which is as consistent with innocence as with guilt is insufficient to sustain conviction.**

Evidence of facts that are as consistent with innocence as with guilt is insufficient to sustain a conviction.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Henry Willsman and another were convicted of violating the Harrison Anti-Narcotic Act, and the named defendant brings error. Reversed, with directions to grant a new trial.

Horace L. Dyer, of St. Louis, Mo., for plaintiffs in error.

Vance J. Higgs, Sp. Asst. Atty. Gen., for the United States.

Before LEWIS and KENYON, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge. Plaintiff in error Henry Willsman and one Bert Grant were convicted of a violation of the Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q). They thereupon sued out a writ of error to this court. The defendant Grant subsequently abandoned the prosecution of the writ and is serving his sentence in Leavenworth.

The indictment contained four counts. The trial court directed a verdict for the defendants upon the first and second counts and submitted the third and fourth counts, with instructions that the defendants could be convicted upon one only of the two counts submitted. The jury convicted the defendants upon the third count, and acquitted them upon the fourth.

The third count of the indictment is based upon the paragraph of section 1 of the Anti-Narcotic Act, as amended by section 1006 of the Revenue Act of 1918 (40 Stat. 1130 [Comp. St. Ann. Supp. 1919, § 6287g]), which makes it "unlawful for any person to purchase" opium, coca leaves, or any compound, manufacture, salt, derivative or preparation thereof, "except in the original stamped package or from the original stamped package." Omitting the allegations of time and place, and recitals to the effect that the defendants had not registered and

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

paid the special tax required by the act, the third count of the indictment charged that the defendants—

"unlawfully and feloniously did purchase from a person whose name is to the grand jurors unknown, a certain derivative of opium, to wit, 30 grains, more or less, of morphine sulphate, otherwise than in or from the original stamped package containing the same; that is to say, they, the said Henry Willsman and the said Bert Grant, * * * unlawfully and feloniously did purchase, from a person whose name is to the grand jurors unknown, said derivative of opium, to/wit, the morphine sulphate aforesaid in a small pasteboard box about three inches long, two inches wide, and one and one-half inches deep, which said pasteboard box, as the container of said morphine sulphate, did not have affixed to it the internal revenue stamps as required by law."

After conviction, plaintiff in error filed a motion in arrest of judgment, which was denied, and exception taken. This ruling of the trial court is assigned as error. The question raised under this assignment has been recently settled against the contention of plaintiff in error by the Supreme Court in United States v. Wong Sing, 43 Sup. Ct. 7, 67 L. Ed. ——, decided October 23, 1922.

There is evidence in the record tending to prove a sale of the drugs described in the indictment by the defendant Grant, and also tending to prove that plaintiff in error aided in making the sale. There is no evidence in the record of a purchase of the drugs by either of the defendants. To sustain the verdict of conviction, the prosecution invokes the further provision of said paragraph of section 1 of the Anti-Narcotic Act, which makes possession prima facie evidence of unlawful purchase. The provision reads:

"And the absence of appropriate tax-paid stamps from any of the aforesaid drugs shall be prima facie evidence of a violation of this section by the person in whose possession same may be found."

Plaintiff in error contends that there is no evidence in the record that the drugs were found in his possession, and that the statutory rule of evidence above quoted may not be invoked to sustain the verdict against him.

The evidence respecting the possession of the morphine mentioned in the indictment was the testimony of the witness Anderson, called by the prosecution. He testified that he called at the home of plaintiff in error (in the city of St. Louis) and showed him a letter or note which purported to be from one R., then confined in a jail in the state of Illinois. In the letter or note plaintiff in error was requested to send morphine to R. by the bearer. Witness told defendant that he and R. were friends; that R. wanted morphine badly, and had asked witness to get it for him from Willsman. Willsman in reply said he would see. They were in the front hall of Willsman's residence at the time. Willsman went to the back part of the house; he came back in about five minutes with his coat and hat on, and said, "I have not got any stuff here, but I will go where we can get some." They walked north, and turned two or three corners. Willsman kept turning and looking back. He said: "I have got to be * * * careful, because they stuck me for this the other day—for selling this stuff." They walked about five or six blocks north, then got on a street car, and rode

eight or nine blocks, got off, and walked east to the river on Second street. At the corner in front of a saloon he said: "You stand here a minute, and I will be back." He went into a house, was gone about five minutes, and when he came back the defendant Grant was with him. Willsman said to witness: "Give him your dough, and he will get you the stuff." Witness in reply said he did not think that a proper way to do business; he did not know Grant—had never seen him before; he would give him the money when he got the stuff. However witness gave Grant the money. Willsman with an oath then said: "We would not cheat the Doc (R.); he is one of the best friends I have got." Turning to Grant he said: "Give him back the dough." Grant handed the money back, and Willsman said to witness: "You walk on up the street, and we will catch you." Witness walked slowly up the street almost a block. He saw Willsman and Grant come out of an alley about half way the block. Witness stopped, and they came up to him, when Willsman said to Grant: "Give him the stuff." Grant took a package that was wrapped in a newspaper out of his pocket. Grant handed the package to witness, and Willsman said: "Now, give him your dough." Witness gave Grant $25 in bills. Willsman then told witness the street car to take to get back to the Union Station.

The testimony of the witness Anderson, which was in substance as above recited, shows that the unstamped package containing the morphine described in the indictment was in the physical possession of the defendant Grant, and was by Grant delivered to the witness at the time the purchase and sale were consummated. Clearly the rule of evidence established by the act providing that possession shall be prima facie evidence of the violation of section 1 of the act was applicable to the defendant Grant; but, under the facts as above recited, can the rule be invoked against the defendant Willsman? So far as the record shows, plaintiff in error never had the package in his hands or under his control. The $25 paid by Anderson was given to the defendant Grant, and so far as the record shows the defendant Willsman never received or expected to receive any part of it.

[1] If the matter before us was upon an indictment charging an unlawful sale by the defendants, the evidence would undoubtedly tend to show Grant to be a principal in fact, and Willsman a principal in law, because aiding and abetting in the sale; but the section of the statute making an abettor a principal has no application to the matter now under consideration. The question presented by the evidence is a question of fact and not one of law. The question is: Was the possession of Grant the possession of Willsman also?

[2] The general rule is that possession, to be incriminating, must be personal and exclusive. No decided cases have been called to our attention, and we have found none, directly in point upon the question now being considered; but the following cases are referred to as bearing upon it: State v. Warford, 106 Mo. 55, 16 S. W. 886, 27 Am. St. Rep. 322; Jackson v. State, 28 Tex. App. 143, 12 S. W. 701; Murphy v. State, 86 Wis. 626, 57 N. W. 361; Frazier v. State, 135 Ind. 38, 34 N. E. 817; State v. Drew, 179 Mo. 315, 78 S. W. 594, 101 Am. St. Rep. 474.

[3] In reason it seems that the actual possession of Grant was the possession of plaintiff in error, if Grant was in fact only his servant in the delivery of the drugs to Anderson. And in reason it seems that the actual possession of Grant was the possession of plaintiff in error, if they were partners or confederates in the business of purchasing narcotic drugs in or from unstamped packages and selling them in violation of law, and the package delivered to Anderson was obtained from a place in their joint possession or under their joint control. In such case the possession of the drugs by Grant when delivered to Anderson would be a mere fortuitous circumstance, and we are convinced the spirit of the act of Congress making possession prima facie evidence would require us to hold that the possession of Grant under such circumstances would be the possession of plaintiff in error.

If, on the other hand, the fact was that the drugs in question were the property of and in the possession of the defendant Grant, and he was holding them for the purpose of illegal sale as opportunity offered, and in the matter detailed by the witness Anderson, plaintiff in error was acting merely as a go-between, for the purpose of securing drugs for the supposed use of his friend R., then the possession of Grant would not be the possession of plaintiff in error.

[4] The ultimate question for determination is, does the evidence point as strongly to the latter as to the former alternative? In other words, is the evidence in the case as consistent with the innocence as it is with the guilt of plaintiff in error? From the testimony of the witness Anderson it appears that the home of Willsman was 14 or 15 blocks distant from the residence of Grant. Willsman said, when solicited for the drug, "I have not got any stuff here, but I will go where we can get some"—a statement which indicates knowledge of a place where the traffic was carried on by others rather than a place where he himself was carrying on the business. When the deal was finally consummated, the money, certainly an important factor in the traffic, was paid to and received by Grant. The remark of Willsman that R. was his friend indicates a reason, and the motive for accompanying Anderson from his own home to the residence of Grant, for the purpose of securing the drug for R.

[5] There is no evidence in the record of any previous association of the defendants in an unlawful traffic in drugs. While there is or may be ground for suspicion that they were associated together in the unlawful traffic in drugs, still under the evidence in the case, and also the lack of evidence, we are of opinion that the language of this court in Union Pacific Coal Co. v. United States, 173 Fed. 740, 97 C. C. A. 581, and quoted with approval in Sullivan v. United States (C. C. A.) 283 Fed. 868, is applicable here:

"Evidence of facts that are as consistent with innocence as with guilt is insufficient to sustain a conviction. Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt, it is the duty of the trial court to instruct the jury to return a verdict for the accused; and where all the substantial evidence is as consistent with innocence as with guilt, it is the duty of the appellate court to reverse a judgment of conviction."

We refrain from noticing other errors assigned, because not argued in the brief of plaintiff in error, and for the further reason that it is

not probable that the matters assigned will again arise upon the retrial of the cause.

The judgment is reversed, and the court below directed to grant a new trial.