POLLACK and another, Plaintiffs in error, vs. THE STATE, Defendant in error.

*January 12—May 1, 1934.*

206

For the plaintiffs in error there were briefs by *Rubin &*
*Zabel,* attorneys for Steve Drinka, and *Joseph A. Padway,*
attorney for Edward Pollack, all of Milwaukee, and oral
argument by *Mr. William B. Rubin* and *Mr. Padway.*

For the defendant in error there was a brief by the *Attor-*
*ney General, William A. Zabel,* district attorney of Milwau-
kee county, and *Herman A. Mosher,* second deputy district

attorney, and oral argument by *Mr. J. E. Messerschmidt,* assistant attorney general, and *Mr. Mosher.*

The following opinions were filed March 6, 1934:

ROSENBERRY, C. J.   1. Defendants assign as error the refusal of the trial court to grant separate trials, and allege such refusal was an abuse of discretion.   The defendants conspired with Peters; they, pursuant to the conspiracy with Peters, acted jointly in the commission of the crime to assault with intent to rob.   To a point in time at least to within a few seconds of the time when Police Officer Zingler was killed, they continued to act in concert.   They therefore should not complain if upon consideration the court denies them separate trials.   Ordinarily, whether or not defendants shall be tried separately lies within the sound discretion of the trial court.   *Mayfield v. State,* 142 Wis. 661, 126 N. W. 15; *Novkovic v. State,* 149 Wis. 665, 135 N. W. 465.   It is not the tactical position taken by counsel for the separate defendants that determines whether or not a separate trial shall be granted.   *Smith v. State,* 195 Wis. 555, 218 N. W. 822.   The defenses in this case were not antagonistic.   The showing made in *Emery v. State,* 101 Wis. 627, 78 N. W. 145, upon a motion for a separate trial, was much more persuasive than is the present case, but a denial of the motion was held not to be an abuse of discretion.

2. It is next urged that the trial court erred in denying defendants' request for additional peremptory challenges under the provisions of sec. 357.03, Stats.   No authority is cited to sustain the position of counsel and we find none. There is no circumstance in the record which indicates any abuse of discretion on the part of the trial court.   A defendant is entitled to a jury which will insure him a fair and impartial trial, but not to an unlimited choice in an attempt

to secure a jury which will acquit him. There is nothing in the record which indicates either in the choice of the jury or in its subsequent conduct that the jury was anything but fair and impartial.

3. The defendants assign as error the refusal of the trial court to submit to the jury the question of whether or not the defendants might be separately found guilty of different degrees of the offense charged. The court instructed the jury as follows:

"I further instruct you that if three persons conspire to commit a felony and in the prosecution of that common design one of them commits murder, it is murder as to all who enter into or take part in the execution of the common object and design for which they combine together. In other words, in this case, if all of the defendants conspired to commit a felony, and if in the prosecution of that common design one of them committed an unlawful homicide, all three are equally guilty of that unlawful homicide.

"One who with others conspires to commit a felony is legally responsible for the act of each and every other person a member of such conspiracy done in pursuance of such common design or purpose, and if three persons who have so conspired commit a felony in pursuance of such common design or purpose and in furtherance of it commit murder, it is murder as to all persons so conspiring."

The court then instructed the jury with respect to murder in the first degree, murder in the second degree, and murder in the third degree. The court instructed the jury fully upon many other matters connected with the case, and at the close of his instructions said:

"Four forms of verdict will be submitted to you for your consideration, one reading:

" 'We, the jury, find the defendants Adolph Peters, Edward Pollack and Steve Drinka, guilty of murder in the first degree, in manner and form as charged in the information.' "

The second was the same except the words "guilty of murder in the second degree" appear in place of "guilty of murder in the first degree." The third was the same except the words "guilty of murder in the third degree" were substituted for "guilty of murder in the first degree," and another verdict finding the defendants not guilty.

Upon the jury leaving the court-room, counsel for defendants called the court's attention to the fact that separate verdicts should have been submitted, whereupon the court said: "They are all guilty or not guilty. They must stand or fall together."

We have under consideration here only the case of Drinka and Pollack. If they are guilty of any degree of murder they are guilty upon the undisputed evidence only because of their relation to Peters, who did the killing. It is the contention of the defendants here that the conspiracy to assault and rob was at an end; that when alarmed by the steps of the approaching officer, what each of the defendants did thereafter was done of his own volition and was no part of the conspiracy. It is not contended that the evidence does not support the verdict as to the defendants, Drinka and Pollack, and if such contention were made it could not be upheld. The whispered consultation after the alarm, the position which the defendants took, the fact that by the shooting Pollack and Drinka were enabled to escape through a window, the sill of which was eight feet above the floor on which they stood, that within a few minutes and within a short distance from the scene of the crime they came together—agreed upon a story to tell which would establish an alibi for Peters—and continued for some distance their common escape, all affords evidence from which the jury might well conclude that the killing of Policeman Zingler was pursuant to some arrangement between the defendants and Peters and was for their common benefit.

The question for consideration is, Were the defendants entitled to have their theory of the case submitted in such form as would enable the jury to return a verdict finding the defendants, Drinka and Pollack, either not guilty or guilty of a different offense than that of which the jury found Peters guilty? That Peters was guilty of a premeditated killing there seems to be little doubt. The defendants did not take the stand upon the trial for any other purpose than to attempt to disqualify their respective confessions. They were therefore neither examined nor cross-examined as to what they did in the basement, and, as before indicated, their statements as to what happened after the alarm are very meager and prompted apparently by a desire to escape as far as possible responsibility for the consequences of Peters' act. While a court may properly instruct a jury that an acquittal would be in disregard of the undisputed facts and the law, nevertheless the question of whether or not the defendant is guilty must be left to the jury. *Schmidt v. State,* 159 Wis. 15, 149 N. W. 388; *Balthazor v. State,* 207 Wis. 172, 240 N. W. 776; *Branigan v. State,* 209 Wis. 249, 244 N. W. 767. By appropriate requests the defendants, Drinka and Pollack, asked to have submitted to the jury the question of whether or not the combination to do the original wrong had been abandoned by reason of an alarm; that the defendants did not conspire to shoot or kill Richard Zingler; that they were not principals and could not be convicted of the offense charged in the information. While it is true that a person charged with a homicidal offense of a high degree is ordinarily entitled to have lesser degrees included therein submitted to the jury, that need not be done unless there is evidence in the record which upon some reasonable view would sustain a conviction for the lesser degree. *Weisenbach v. State,* 138 Wis. 152, 119 N. W. 843. In *Weisenbach v. State* it is also held, in ac-

cordance with the general rule, that a requested instruction, although it embodies a correct rule of law, if it be not applicable to the facts of a particular case, may properly be refused.

Some confusion is likely to arise if the distinction between acts done pursuant to a conspiracy and acts which constitute aiding and abetting is lost sight of. One who is aiding and abetting acts upon his own initiative, is chargeable with the consequences of his own acts. He may desist at any point. A conspirator, on the other hand, is chargeable with the acts of his coconspirators and the conditions governing withdrawal are entirely different, as we shall see. Upon the undisputed evidence in this case we are dealing with a conspiracy to commit a felony, to wit: An assault with intent to rob, in the course of which one of the conspirators, to aid in an escape, kills a third person under such circumstances that the killing is murder in the first degree. The contention of the defendants is that there was an abandonment of the conspiracy at the time of the killing and that Peters acted upon his own account and independently. If the evidence is such that in any reasonable view of it a finding to that effect could be sustained, the trial court should, upon being properly requested, have submitted the issue. No principle of law is better established than that where several parties conspire or combine together to commit an unlawful act, each is criminally responsible for the acts of his associates committed in the prosecution of the common design, the act of each one of the conspirators being, in contemplation of law, the act of each and all. *Miller v. State,* 25 Wis. 384; 12 C. J. p. 577, § 86, and cases cited. See note, "Responsibility of one assisting in robbery during which his companion commits murder," 45 L. R. A. (N. S.) 55.

It is equally true that each of the conspirators is responsible for everything done by his coconspirators which follows

incidentally in the execution of the common design as one of its probable and natural consequences, even though it was not intended as a part of the original design or common plan. *Miller v. State, supra; Boyd v. United States,* 142 U. S. 450, 12 Sup. Ct. 292. So it has been held that where there was a conspiracy to rob in which a defendant participated and in the perpetration of which a murder was committed by his associate, he is as guilty of murder as if he had actually done the killing himself, and it is no defense that the defendant did not intend that a life should be taken on the perpetration of the robbery or forbade his associate to kill. *People v. Lawrence,* 143 Cal. 148, 76 Pac. 893, 68 L. R. A. 193; *Hayes v. State,* 112 Wis. 304, 87 N. W. 1076.

It is true that there may be a withdrawal from the common design, but as was well said by the court of appeals of the state of New York:

"Whatever may be the other requirements of an effective abandonment of a criminal enterprise, it is certain both as a matter of law and of common sense that there must be some appreciable interval between the alleged abandonment and the act from responsibility for which escape is sought. It must be possible for a jury to say that the accused had wholly and effectively detached himself from the criminal enterprise before the act with which he is charged is in the process of consummation or has become so inevitable that it cannot reasonably be stayed. The process of detachment must be such as to show not only a determination upon the part of the accused to go no farther, but also such as to give his co-conspirators a reasonable opportunity, if they desire, to follow his example and refrain from further action before the act in question is committed. A conspirator cannot escape responsibility for an act which is the natural result of a criminal scheme which he has helped to devise and carry forward because as the result either of fear or even of a better motive he concludes 'to run away at the very instant when the act in question is about to be committed and when the transaction which immediately begets it has actually been commenced." *People v. Nichols,* 230

N. Y. 221, 229, 129 N. E. 883, 885.  See also 29 C. J. p. 1076.

What are the facts in this case?  Up to the moment of the alarm produced by the approach of Officer Zingler, Peters and the defendants were acting together pursuant to a pre-arranged plan.  At the instant of the alarm one of them turns out the light which is for the protection of all.  They are all possessed of a common desire to escape the conse-quences now imminent.  One steps over and turns out the light.  One of them armed with a revolver takes a position where the intruder upon their operations must come in close proximity to him, orders him to throw up his hands, and upon his failure to do so shoots him.  Prior to taking this position there is, according to the testimony of Schweizer, a whispered conference between the three confederates.  As a result of the shooting all three escape.  Drinka and Pollack made no plunging escape from the building.  They went through an opening two feet wide and possibly eighteen inches high, closed by a window hinged at the top.  The sill of this window was eight feet from the floor.  To make the escape must have required time and a considerable degree of agility.  While Drinka dropped his gun, he dropped it after the shot was fired by Peters.  Within a few moments and a short distance, the three confederates are found together es-caping from the scene of their crime.  There is no circum-stance from which it can be reasonably inferred that the defendants here ever abandoned or even attempted to aban-don the conspiracy.  The killing of Officer Zingler was so immediate, so closely connected in time and space with the furtherance of the common purpose of the surprised con-spirators, that no issue of abandonment is raised.  See note "Escape as a part of common intent to commit crime," 68 L. R. A. 209, and cases cited.

On behalf of the defendants it is contended that this is not a case of conspiracy.  It is true that in the information no

conspiracy is charged. It is not necessary, however, in order that the state may establish the guilt of the defendants as conspirators, to charge a conspiracy. Here they are charged not with the statutory offense of conspiring but with the offense of murder. The allegations of the information will be sustained if it appear that, while engaged in the commission of a felony for the commission of which they conspired, Officer Zingler was killed. The fact of conspiracy is material only so far as it necessarily affects the admissibility of evidence. The defendants may therefore properly be treated as conspirators even though no conspiracy is alleged in the information. *Murphy v. State,* 86 Wis. 626, 57 N. W. 361. So it is held generally that it is not necessary that a conspiracy be alleged in the information. When the fact of the conspiracy appears, the acts and declarations of one conspirator in furtherance of the conspiracy are admissible against the others. *People v. Becker,* 215 N. Y. 126, 109 N. E. 127. See 16 C. J. p. 647, § 1284, and cases cited.

It is also contended that the court should have instructed the jury that the defendants here might be found guilty of a different degree of homicide than that of which Peters was guilty. Under the undisputed facts in this case the defendants were guilty, if guilty at all, as coconspirators with Peters. How then could they be guilty, if guilty at all, of any other offense than that of which Peters was guilty? Upon authority of the cases already cited it is well-established law that the act of one conspirator is the act of all. His intent is the intent of all, and if the defendants are guilty as coconspirators then they must be guilty of the same offense. If Peters was guilty of murder in the first degree, then these defendants could not be guilty of murder in the third degree because the act of Peters was their act, being coconspirators; his intent was their intent. 45 L. R. A. (N. S.) 55, and cases cited.

It is next urged that the court was in error in refusing to instruct the jury that the defendants might be acquitted although .Peters was found guilty. The colloquy between counsel and the court with respect to the form of the verdict occurred after the jury had retired for its deliberation. The charge of the court with respect to the burden of proof, reasonable doubt, presumption of innocence, credibility of witnesses, was full and explicit. The defendants assign error because the jury were given no instructions to the effect that they could find one guilty and the others not guilty. In the absence of a request this was not error. *Long v. State,* 95 Ind. 481, 488; *Hodge v. State,* 85 Ind. 561.

While it is true that the form of verdict submitted by the court with respect to acquittal contained the names of the three defendants, there is nothing in the instructions of the court which indicated that they must include all three defendants in a verdict of acquittal. The jury was apparently an intelligent one. After being out some fifteen hours they returned and asked that the instructions with respect to murder in the first, second, and third degrees be reread. They then retired and, some two or three hours afterward, returned with the verdict as entered. It would have been better practice perhaps had the court included, instead of a verdict containing the names of the three defendants, a verdict of acquittal as to each defendant. Upon this record, however, it cannot be said that the court's failure to submit the verdict in that form was in any way prejudicial to these defendants. Upon the evidence in this record the jurors would have violated their oaths if they had convicted Peters and acquitted the defendants. The court did not deprive the jury of the power or right to acquit the defendants or any one or two of them or to find the different defendants guilty of different degrees of murder. A court is not required to stultify itself to the extent of assuming that a jury will vio-

late its solemn duty. Upon the record there was a plea of guilty of some degree of homicide in everything but form. Upon the law and the evidence the only issue left for determination by the jury was the degree of homicide.

It is next urged that the confessions offered and received in evidence were inadmissible because they were obtained by trickery and cajoling, that as to one of the conspirators a minister was called in to pray with him, and a priest was called in to administer spiritual aid to another. Few courts have denounced more vigorously than has this court the subjection of defendants to inquisition by the third degree so called. *Lang v. State,* 178 Wis. 114, 189 N. W. 558. On the other hand, there is nothing more natural than that a defendant, who in a period of remorse and repentance has confessed his wrong-doing, should seek to avoid his confession when he is confronted with the consequences of it at a trial, and so there are cases where defendants who have confessed, have made up stories out of whole cloth to meet the situation in which they have found themselves. In the present case, three felons, shown to be such by their plea of guilty, were charged with the killing of a police officer in the city of Milwaukee. No doubt the effort of the police department to bring the murderer of their fellow officer to book for his crime was vigorous and persistent as it should have been. However, we have carefully considered the record in this case. While the defendants testify to some acts on the part of officers which were improper, this testimony is denied by the officers. The so-called confessions or admissions of guilt bear internal evidence that those who made them had a very high degree of self-possession. In the case of these defendants there is almost a blank from the time of the alarm made by the approaching officer to the time when they were out upon the railroad tracks. As to that period practically nothing is disclosed. Schweizer, though bound, was possessed of his senses and was able to testify as

to what happened up to the moment of the shooting. The confessions of these defendants show quite clearly that they were confessing only to those matters which, so far as they knew, were quite likely to be established by other evidence. The court in this case permitted the defendants to be sworn in an effort by the defendants to establish the fact that the confessions were not voluntary. Other evidence was offered in support of the claim that the confessions were voluntary. The court admitted the evidence, and then left to the jury under proper instructions the question of whether or not the confessions were in fact voluntary. This is in accord with the practice in many states. See note, "Voluntariness of confession admitted by court as question for jury," 85 A. L. R. 870, at page 881, where the cases are collected and analyzed. While Wisconsin has been placed by the annotator in the doubtful column, it is considered by the holding in *Sweda v. State,* 206 Wis. 617, 240 N. W. 369, that the court is committed to the rule that the question of the admissibility of the alleged confession is in the first instance for the court; if there be doubt with respect to the fact that it was voluntary, then that question should be submitted to the jury with proper instructions. If it clearly appears upon the preliminary hearing to determine the admissibility of the confessions that they were procured by duress and are not voluntary, they should not be admitted in evidence in the first instance, and if, under such circumstances, they are admitted, the error is not cured by instructions to disregard them. *Jones v. State,* 184 Wis. 50, 198 N. W. 598. Here it does not clearly appear that the confessions of these defendants were not voluntary and such doubt as existed was a matter for the jury which the court submitted in this case under proper instructions as to which no complaint is made.

In connection with the arguments presented here, it is proper to say that confessions are one species of admissions against interest made by a party and are admissible as such.

2 Wigmore, Evidence, p. 127, § 816.   See subsequent paragraphs for history of the rule.   Confessions may be and are excluded when in the opinion of the court they are testimonially untrustworthy, as where they are induced by considerations likely to elicit an untrue confession, as, if they were not voluntary because they were induced by threat or promise.   Confessions are not inadmissible because of any breach of confidence or of good faith which may be involved unless the circumstances are such as to suggest untrustworthiness.   2 Wigmore, Evidence, pp. 142, 169, §§ 823, 841, and cases cited.   There is nothing in the record that casts the slightest doubt on the trustworthiness of the confessions made by the defendants.

The apprehension and conviction of criminals is not a sporting event and as such to be conducted according to certain ideals as to what constitutes good sportsmanship.   There is a tendency to manifest sympathy for an accused criminal, prompted by a feeling that he is the under dog because he must contend against society single-handed.   Such sympathy if any should be extended with some regard to the character of the criminal and circumstances of the crime.   The mere fact that he is under accusation does not entitle him to sympathy.   A good deal of the sympathy lavished upon criminals might much better be expended upon their victims and their families.   While every defendant is entitled to and should be assured a fair and impartial trial, the threat of organized and even sporadic crime against social security, both as respects person and property, is such as to require a firm as well as a just administration of the criminal law.

It is further contended on behalf of these defendants that the dying statement made by Police Officer Zingler is inadmissible because it was not spoken without hope of recovery and in the shadow of impending death, within the rule laid down in *State v. Law,* 150 Wis. 313, 136 N. W. 803, 137 N. W. 457; *Shepard v. United States,* 290 U. S. 96, 54

Sup. Ct. 22, 78 L. Ed. 6. It appears from the post-mortem, which was done on February 8, 1933, at 2:30 p. m., that Officer Zingler sustained two wounds, one to the small finger of his left hand and a bullet wound in the left breast. The course of the bullet was through the diaphragm just to the left of the cardiac apex, through the left tip of the liver, through the gastrohepatic ligament, through the lesser curvature of the stomach, the retroperitoneal tissues to the left costovertebral angle, where the bullet was found imbedded beneath the aponeurosis. As appears from the facts already stated, the wound was inflicted about 11 p. m. on Monday, February 6, 1933, and he died at 1:13 a. m. on February 8, 1933. On February 7, 1933, at 12:40 a. m., about one and one-half to two hours after the shooting, the statement of Patrolman Zingler was taken, which is known in the case as the dying declaration. During the course of the statement, which was by question and answer, Zingler was asked this question: "Richard, do you know you are apt to die from the injuries you received this evening?" to which he answered: "I can feel it coming on, yes." He died almost exactly twenty-four hours later. When a man is wounded in the manner which Officer Zingler was, and, in response to a question as to whether he knows he is apt to die, says that he feels death coming on, it would seem as though every requirement of the law with respect to the admissibility of a dying statement has been fulfilled. The showing with respect to the declarant's state of mind might well have been more full and explicit than it is. One who in response to an inquiry says that he feels death coming over him, certainly can have no hope of recovery and has a settled expectation of death which brings his statements clearly within the rule. 3 Wigmore, Evidence, p. 170, §§ 1440, 1442.

On February 12th, six days after the shooting, the defendants and Peters were taken to the Schweizer basement and there, at the request of the police officers, posed or to

some extent re-enacted their movements on the night of February 6th. Photographs were taken of the defendants in some of the positions which they indicated they occupied at that time. These photographs were offered in evidence and were objected to on the ground that they were improper. No claim was made that there was any element of coercion, that the photographs did not faithfully represent the situations which they were supposed to illustrate. It also appears that the defendants knew that the photographs were being taken.

The precise question raised has not heretofore been considered by this court. In *Thornton v. State,* 117 Wis. 338, 93 N. W. 1107, there is an excellent discussion of some of the underlying principles. In 27 A. L. R. 913, under the title "Admissibility of posed photograph based on recollection of position of persons or movable objects," the cases are collected and analyzed. In a number of states such photographs are denied admission, principally for the reason that their accuracy depends upon the recollection of some witness or witnesses, and such recollection with relation to movable or moving objects is not reliable. In a number of other states it is held that such photographs are admissible when properly authenticated and a proper foundation laid therefor by preliminary testimony. As was pointed out in a number of these cases, it has always been permissible to use diagrams, models, and reproductions upon the trial of cases, both civil and criminal. In some cases it is very difficult to understand the evidence except by the aid of a diagram, map, or model. If there was anything in the record to indicate that the defendants were in any way coerced, a serious question would be raised. In any event, it is considered that it is a practice which is not to be commended. In this case the jury had a view of the premises, the defendants were before them, there was no substantial dispute in the evidence, all that could be gained by the admission of the photographs was a more graphic representation of what the state

claimed. A question of self-incrimination may be involved in cases of this kind. While in this case the evidence indicates no violation of the rule laid down in *Thornton v. State, supra,* the line of demarcation is not easily determined and might inadvertently be passed. 5 Wigmore, Evidence, p. 873, § 2265.

We have considered all of the questions raised by counsel for defendants and have given them the attention which their importance warrants and demands. Our labors have been considerably increased by reason of the state of the record and of the fragmentary character of the printed case. Defendants are indigent and under the rule they were entitled to have the case printed at the charge of the state, but we were informed upon the oral argument that some limitation of appropriation prevented. While every effort should be made to economize in the administration of all departments of government, it hardly is appropriate to plead economy where the liberty and life of a citizen are at stake. We are also met with a strong appeal that there should be a new trial in the interest of justice. This is one of the cases where a new trial can only be granted in order to vindicate abstract legal principles. Upon the record before us no member of this court entertains the remotest doubt but that the defendants are each of them guilty as found by the jury. They have been vigorously and skilfully defended by vigilant and resourceful counsel, who have urged in the trial court and here in a lawyer-like way, every proposition that might be set up in their behalf. The defendants have been deprived of no right which either the constitution or the law gives them. The failure to submit separate verdicts of acquittal as to each of the defendants at the trial might in a doubtful and close case constitute reversible error. It can scarcely do so in this case where the jury could not have acquitted the defendants without violating their oaths which they took to render a just and true verdict upon the evidence. An eloquent plea is addressed to us upon the sanctity of the jury

and the right of the defendants to be acquitted, even though the acquittal be contrary to law and the facts. The jury were not deprived of that power in this case, and under the instructions of the court it must have been apparent to the jury that they could have convicted or acquitted all or any of the defendants. While some oral argument was made to the effect that the defendants were driven by necessity to the commission of the crime with which they are charged, we find no extenuating circumstances in this record. On the contrary, it appears that each one was lodged in a home, and, for all the record shows, a good home, and went out with masks and guns to commit with great premeditation a felony under our law. This is no crime of sudden violence—although the final result may not have been fully anticipated. The defendants knew that they took their chances with respect to detection and discovery, and they were prepared accordingly both to defend themselves and to escape identi-·fication. No one can do anything but regret when young men go wrong. The price which they pay is so out of proportion to any hope of benefits that one cannot help regret their action, but regret and sympathy cannot restore Officer Zingler to his family or to the service in which he had spent so many years of his life. If society does not protect those who undertake to protect it, then it is neither grateful nor just.

*By the Court.*—Judgment affirmed.

FRITZ, J. (*dissenting in part*). I do not concur in the conclusion that it was not prejudicial error to deny the timely request made on behalf of plaintiffs in error to submit to the jury such forms for verdicts as would have allowed the jury to find Drinka or Pollack guilty of a different degree of homicide than Peters. As is said in the opinion filed for the court:

"Upon the law and the evidence the only issue left for determination by the jury was the degree of homicide."

That opinion recognizes that—

"It would have been better practice perhaps had the court included, instead of a verdict containing the names of the three defendants, a verdict of acquittal as to each defendant."

However, that does not remedy the improper denial of the defendants' right to have the jury determine separately as to each defendant the degree of homicide of which he was guilty. Even though the evidence admitted of finding that each defendant was guilty of murder in the first degree, nevertheless, there were such differences in the mental capacity and attitude of each of the defendants, and the manner in which each participated in the events which culminated in the unanticipated shooting of Zingler by Peters, that it was within the jury's province to find Drinka or Pollack guilty of murder in some other degree than Peters. Under the circumstances, the trial court was in error in concluding that "they must stand or fall together," and that, therefore, the jury had to find all three either guilty in the same degree, or all entitled to acquittal. As was said in *State v. Harvey,* 130 Iowa, 394, 106 N. W. 938:

"It is too well established to justify argument that upon the trial of two defendants jointly charged with crime (except where from the very nature of the offense charged it must have been jointly committed, if at all), it is not within the province of the court to say to the jury that both must be convicted or both acquitted. . . . It is very possible that the circumstances of a given case may be such that a verdict of guilty as to one of two defendants and of not guilty as to the other would be grossly unreasonable, and yet, if the case be not one for a directed verdict of acquittal as to one or both of the accused, the right of each to have the question of his individual guilt or innocence passed upon by the jury cannot rightfully be denied. If the court had elsewhere in its charge stated to the jury the rule of law to which we have adverted and explained its application to the case on trial, we could perhaps safely say that the error in the paragraph under consideration was without prejudice; but no such in-

struction was given, except as the same might be inferred from the submission of blank forms upon which a verdict of guilty as to one, and not guilty as to the other defendant, could be returned. But the jury should not be left to infer the proper rule in a matter of such prime importance."

See also *Miller v. State,* 139 Wis. 57, 119 N. W. 850; *State v. Vaughan,* 200 Mo. 1, 98 S. W. 2; *McKenzie v. State,* 11 Okla. Crim. 554, 149 Pac. 911; and *State v. Lambert,* 318 Mo. 705, 300 S. W. 707.

It is certainly a serious question whether the prejudicial character of this type of error may properly be gauged by a determination in this court of the weight of the evidence. In the case of error in admitting evidence, it may at times be concluded—especially in view of the statute requiring that prejudice affirmatively appear—that the weight of the evidence is such that the error could not be said to have affected the result. On the other hand, if a trial court had directed a verdict, it would be improper to disregard the error merely by reason of the fact that the evidence of guilt is overwhelming. In the case at bar the error is of the latter sort. Each defendant was entitled to have his individual guilt separately judged by the jury, and his rights were not to be diminished by the trial of the defendants together. The denial of that right was prejudicial error as a matter of law.

I am authorized to add that Mr. Justice WICKHEM concurs in this dissent.

A motion for a rehearing was denied, without costs, on May 1, 1934.

The following memorandum was filed May 8, 1934:

PER CURIAM (*on rehearing*). Upon this motion, counsel for the defendants for the first time urge that in compel-

ling the jury to find all three of the defendants equally guilty or not guilty of each and every degree of murder submitted to them, the court violated art. XIV, sec. 1, and art. VI of the constitution of the United States. We have considered this assignment of error and find no impairment of the constitutional rights of the defendants for the reason that the court did not compel the jury to so find. The remark made by the court upon which the assignment of error was in large part based was not within the hearing of the jury nor was it communicated to them. Under the instructions given by the trial court the jury might have returned a verdict of acquittal as to any one or all of the defendants.