STATE of Wisconsin, Plaintiff-Respondent,

v.

Jose F. GONZALEZ, Defendant-Appellant.†

Court of Appeals

*No. 2007AP2160–CR. Submitted on briefs May 6, 2008.
—Decided August 12, 2008.*

2008 WI App 142

(Also reported in 758 N.W.2d 153.)

† Petition to review filed.

130

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Dianne M. Erickson*, of *Wasielewski and Erickson*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Pamela Magee*, assistant attorney general.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. CURLEY, P.J.   Jose F. Gonzalez appeals from a

corrected judgment of conviction entered after a jury found him guilty of first-degree intentional homicide as a party to a crime, contrary to Wis. Stat. §§ 940.01(1)(a) and 939.05 (2003–04).[2] He also appeals from the order denying his postconviction motion. Gonzalez contends that he is entitled to a new trial because the trial court erred when it designated a juror, who a witness recalled went to school with the witness and Gonzalez, as an alternate and subsequently dismissed the juror prior to deliberations. We reject Gonzalez's arguments because the trial court properly exercised its discretion in designating the juror in question as an alternate. Therefore, we affirm.

## I. Background.

¶ 2. On September 16, 2005, Gonzalez was charged, as a party to a crime, with one count of first-degree intentional homicide for the death of Randy House. Gonzalez gave conflicting stories to the police as to the events that occurred, and as to his whereabouts, on the night in question. Originally, Gonzalez told police that he went to the lagoon, where House's body was found, to go swimming with a group of individuals, and that while he was at the lagoon, he saw two men

---

[2] The judgment of conviction was corrected to reflect the sentence imposed. The verdict form states that Gonzalez was found "guilty of first[-]degree intentional homicide of Randy House as charged in the information." The information charged Gonzalez with violating Wis. Stat. §§ 940.01(1)(a) and 939.05. However, the record indicates that the prosecutor moved to dismiss the party to a crime allegation and the jury was not instructed on it. We need not resolve the discrepancy to decide the issues raised.

All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

beating up another man, who he assumed was a drug dealer. Upon seeing this, Gonzalez told police he got scared and ran away. Gonzalez later told police that he went to the park where the lagoon was located with three men and that he did not remember anything until he woke up and saw that two of the men he came with were beating up the third. Gonzalez claimed that when he saw the two men beating the third, he ran away. Gonzalez subsequently told police that he was at the lagoon alone with House and that the previous versions of what had transpired were untrue. A pair of pants that Gonzalez was seen wearing the night the murder took place were recovered from an alley approximately five blocks from a gas station where Gonzalez had stopped to call his aunt to pick him up. The Wisconsin State Crime Lab discovered House's blood on the pants that Gonzalez was seen wearing. In addition, Gonzalez was seen leaving a bar within five seconds of House on the night that he died and did admit to pushing him.

¶ 3. Gonzalez was convicted at a jury trial of first-degree intentional homicide on June 9, 2006. The facts that led to Gonzalez's conviction are not at issue in this appeal.

¶ 4. During the third day of testimony during Gonzalez's jury trial, a witness for the State, Gina LaGosh, who was not listed on the State's initial witness list, brought to the court's attention that she recognized one of the jurors, Juror Molenda, and stated to the court that she, Juror Molenda, and Gonzalez all went to middle school together. This comment was made to the court outside the presence of the jury after LaGosh had finished testifying. LaGosh explained to the court that she knew Juror Molenda's last name because she remembered her from elementary school, middle school, and one year of high school. LaGosh

133

further stated that she could remember Juror Molenda's sister's first name.[3] LaGosh said that Juror Molenda had been looking at her as if she recognized her. With regard to Juror Molenda being allowed to be on the jury, LaGosh stated that, "I just don't think it's fair. I don't think it's fair. Like something ever happened, she could make a judgment on that."

¶ 5. Juror Molenda was then brought into the courtroom and asked where she went to elementary, middle, and high school. Juror Molenda responded that she attended General Mitchell Elementary, Cudahy Middle School, and Cudahy High School. According to LaGosh, she and Gonzalez also attended Cudahy Middle School, and LaGosh attended Cudahy High School for 9th grade. Juror Molenda graduated from Cudahy High School in 2005, one year before Gonzalez's trial began. When Juror Molenda was asked by the trial court whether she remembered LaGosh, she responded that she had never seen her before.

¶ 6. The trial court ruled that Juror Molenda should be designated as an alternate juror, and she was ultimately excused before deliberation. The trial court's primary concern was that Juror Molenda's memory might be jogged by the proceedings in court, and that Juror Molenda would remember Gonzalez or LaGosh during the proceedings, and that this might affect Juror Molenda's ability to deliberate impartially. Defense counsel objected to the removal of Juror Molenda from deliberations, stating that no issue of recognition of Gonzalez came up in *voir dire* for Juror Molenda. The trial court overruled Gonzalez's objection to Juror

---

[3] It is not clear from the record whether the name that LaGosh gave as Juror Molenda's sister's first name, Abby, was correct.

Molenda's designation as an alternate, stating that Juror Molenda was removed as a precautionary measure so that her deliberation would not be biased toward either side in the event Juror Molenda suddenly remembered Gonzalez or LaGosh during deliberation and would have to ask to recuse herself, causing a mistrial.

¶ 7.    Gonzalez appeals the trial court's decision to remove Juror Molenda and asks that he be given a new trial.

## II. ANALYSIS.

*The trial court properly exercised its discretion in designating Juror Molenda as an alternate before deliberations.*

¶ 8.    Gonzalez claims that the trial court's designation of Juror Molenda as an alternate juror before deliberations began was inappropriate and thus an erroneous exercise of discretion, and that this court should grant him a new trial because of this error. We disagree and hold that the trial court properly exercised its discretion.

¶ 9.    It is a fundamental principle that a criminal defendant has the right to a trial by an impartial jury, and the courts are assigned the task of upholding the integrity of juries. *See Carthaus v. State*, 78 Wis. 560, 567, 47 N.W. 629 (1891). "A defendant is entitled to a jury which will insure him a fair and impartial trial, but not to an unlimited choice in an attempt to secure a jury which will acquit him." *Pollack v. State*, 215 Wis. 200, 207–08, 253 N.W. 560 (1934), *overruled in part on other grounds by State ex rel. Goodchild v. Burke*, 27 Wis. 2d 244, 262, 133 N.W.2d 753 (1965).

¶ 10.   A trial court has the discretion to remove a juror for cause during a trial proceeding. *State v. Lehman*, 108 Wis. 2d 291, 299, 321 N.W.2d 212 (1982); *see also State v. Edmunds*, 229 Wis. 2d 67, 82, 598 N.W.2d 290 (Ct. App. 1999). "We review a court's exercise of discretion only for an erroneous exercise of that discretion. If the discretionary determination is based upon facts in the record, application of the correct law, and a rational mental process arriving at a reasonable result, the discretionary determination will be sustained." *Larry v. Harris*, 2007 WI App 132, ¶ 17, 301 Wis. 2d 243, 733 N.W.2d 911, *rev'd in part on other grounds*, 2008 WI 81, 311 Wis. 2d 326, 752 N.W.2d 279 (citations omitted).

¶ 11.   A trial court's discretion is not without limits. Our supreme court has defined a trial court's discretion as follows:

> [T]he term contemplates a process of reasoning. This process must depend on facts that are of record or that are reasonably derived by inference from the record and a conclusion based on a logical rationale founded upon proper legal standards. ... [T]here should be evidence in the record that discretion was in fact exercised and the basis of that exercise should be set forth.

*McCleary v. State*, 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971) (citation and internal quotation marks omitted).

¶ 12.   Specific proof of bias is not required for a judge to dismiss a juror during a trial, as it would be to overturn an adverse verdict. *State v. Williams*, 220 Wis. 2d 458, 466, 583 N.W.2d 845 (Ct. App. 1998).

Instead, upon determining that dismissal of a juror may be required, the trial court should proceed as follows:

> [I]t is the [trial] court's duty, prior to the exercise of its discretion to excuse the juror, to make careful inquiry into the substance of the request and to exert reasonable efforts to avoid discharging the juror. Such inquiry generally should be made out of the presence of the jurors and in the presence of all counsel and the defendant. The juror potentially subject to the discharge should not be present during counsel's arguments on the discharge. The [trial] court's efforts depend on the circumstances of the case. The court must approach the issue with extreme caution to avoid a mistrial by either needlessly discharging the juror or by prejudicing in some manner the juror potentially subject to discharge or the remaining jurors.

*Lehman,* 108 Wis. 2d at 300 (footnote omitted).

¶ 13. The trial court followed the correct procedure in questioning Juror Molenda and eventually dismissing her from deliberations, and acted in keeping with *Lehman* when it questioned Juror Molenda outside the presence of the other jurors. The trial court also met the standard that the court used in *Lehman* by putting on the record the reasoning it used in removing Juror Molenda from deliberation. "Adherence to this practice facilitates the decision-making process of the [trial] court in the first instance and aids appellate review." *Id.* at 301. The trial court in this case was very particular in stating its reasoning for removing Juror Molenda on the record:

> [A]t some point in the deliberations she may have come to the determination that she really has to say something, that she really does now place [Gonzalez] as the person who stood out or whatever it was in middle school and she really has to say something, and [at]

that point there would be cause to remove her and that would be a disaster for us because it would mean . . . retrying the whole case again.

So as a precautionary measure, because of the possibility of her being unfair to one side or the other and the possibility that it would cause a mistrial when she removed herself in the course of deliberations, I did strike Ms. Molenda for cause.

¶ 14. Gonzalez relies on *State v. Smith*, 2006 WI 74, 291 Wis. 2d 569, 716 N.W.2d 482, to support his argument that the trial court's designation of Juror Molenda as an alternate was in error because she showed no bias toward him. Wisconsin recognizes three kinds of specific bias: statutory, subjective, and objective. *Id.*, ¶ 19. Gonzalez claims that the trial court did not demonstrate any of the three forms of specific bias that are listed in *Smith* and that, therefore, this lack of demonstration of a specific bias for Juror Molenda is grounds for a new trial. We disagree.

■■

¶ 15. The trial court did not need to demonstrate that Juror Molenda had a specific bias in order to dismiss her from deliberations. A demonstration of a specific bias of a juror is not needed to merely remove a juror from deliberations when there are twelve other jurors whose impartiality the trial court does not have a concern about. *See Williams*, 220 Wis. 2d at 466 (stating that "specific proof of bias is not required, as it is when a party seeks to overturn an adverse verdict"). When the trial court finally dismissed Juror Molenda, there was still a full panel of twelve jurors who had heard all of the evidence and whose impartiality was not in question.

¶ 16.   *Smith*, a case relied on by Gonzalez, is also factually distinguishable from Gonzalez's case in that the defendant in *Smith* claimed that his constitutional right to a fair and impartial jury trial had been abridged when the trial court refused to strike a juror for cause during *voir dire* because the juror worked in an administrative capacity for the district attorney's office. *See Smith*, 291 Wis. 2d 569, ¶ 2. Here, the trial court was not refusing to strike a juror for cause at the defendant's request, as it was in *Smith*; it was merely taking steps, through an exercise of discretion, to ensure a fair and impartial jury. The trial court's assessment of the facts surrounding Juror Molenda's impartiality will not be overturned by this court, as it is clear that the trial court's primary concern was fulfilling its duty as the insurer of a fair trial proceeding and its assessment of the facts was not clearly erroneous.

¶ 17.   Gonzalez also claims that, with respect to LaGosh's claim that Juror Molenda appeared to recognize her, *State v. Meehan*, 2001 WI App 119, 244 Wis. 2d 121, 630 N.W.2d 722, should control this court's decision. In *Meehan*, the court stated, "[w]e strongly discourage trial courts from striking jurors for cause based on nonverbal expressions made throughout the course of the trial without conducting a proper *voir dire* to determine if the juror is unable to be impartial." *Id.*, ¶ 35 n.7. Thus, based on the holding, Gonzalez submits that the trial court erroneously exercised its discretion.

¶ 18.   The trial court in this case did precisely what the court in *Meehan* stated is proper. Juror Molenda was questioned by the trial court and was asked about any connection she might have to Gonzalez and LaGosh. Juror Molenda stated that she went to the schools that LaGosh said she did, specifically the middle school that Gonzalez and LaGosh attended. The record

139

reflects that the trial court did not dismiss Juror Molenda based on nonverbal expressions; rather, it was the risk Juror Molenda's memory would be jogged at some point in the deliberations that drove the trial court's decision.

¶ 19.   Gonzalez claims that his right to a particular jury was infringed on by the trial court's removal of Juror Molenda. Gonzalez relies on *People v. Whyte*, 725 N.Y.S.2d 347, 348 (N.Y. App. Div. 2001), a case where a new trial was granted for the defendant on the grounds that the defendant's right to a trial by a jury that he selected was impinged when the lower court judge removed a juror who knew one of the state's witnesses. The facts of *Whyte* are distinguishable from Gonzalez's case in that, here, the trial court dismissed Juror Molenda for her potential knowledge of the defendant and a witness, not just a witness, as in *Whyte*.

¶ 20.   Finally, Gonzalez claims he is entitled to a new trial because Wis. Stat. § 805.08(2), which states, in part, that when there are excess jurors who are unnecessary for deliberations, "the court shall determine by lot which jurors shall not initially participate in deliberations," was not followed. While it is true that the trial court in this case did not determine by lot which jurors would not participate in deliberations, this was appropriate because notwithstanding § 805.08(2), as previously stated, the trial court has the discretion to remove a juror for cause during a trial proceeding. *See Lehman*, 108 Wis. 2d at 299; *cf. Williams*, 220 Wis. 2d at 466 (concluding that trial court did not erroneously exercise its discretion in dismissing a juror even though it did not make the determination "by lot" pursuant to § 805.08(2)).

¶ 21. The trial court properly exercised its discretion when it designated Juror Molenda as an alternate based on its concern regarding her potential impartiality. The trial court has a duty to ensure that the impaneled jury is an impartial one; one that is free of bias or prejudice. *See State v. Williams*, 2000 WI App 123, ¶ 19, 237 Wis. 2d 591, 614 N.W.2d 11 ("[T]he trial court ultimately bears the responsibility for ensuring that a fair and impartial jury is impaneled.").

¶ 22. WISCONSIN STAT. § 805.08(1) pertains to the juror selection process and provides:

> The court shall examine on oath each person who is called as a juror to discover whether the juror is related by blood, marriage or adoption to any party or to any attorney appearing in the case, or has any financial interest in the case, or has expressed or formed any opinion, or is aware of any bias or prejudice in the case. If a juror is not indifferent in the case, the juror shall be excused.

Both the United States Constitution and the Wisconsin Constitution contain provisions guaranteeing an impartial jury trial for criminal defendants.[4] The discretionary steps that the trial court took to ensure that the court's duty to impanel an impartial jury were appro-

---

[4] The Sixth Amendment of the United States Constitution provides, in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed."

Article I, section 7 of the Wisconsin Constitution provides, in part: "In all criminal prosecutions the accused shall enjoy the right . . . to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed."

priate and within the limits of the trial court's discretion. The procedure followed, in designating Juror Molenda as an alternate, was appropriate as well.

¶ 23. For the aforementioned reasons, we affirm the judgment of conviction and the order denying Gonzalez's postconviction motion.

*By the Court.*—Judgment and order affirmed.