STATE of Wisconsin, Plaintiff-Respondent,

v.

Lawrence WILLIAMS, Defendant-Appellant.†

Court of Appeals

*No.  97–1276–CR.  Submitted on briefs May 4, 1998.—Decided June 9, 1998.*

(Also reported in 583 N.W.2d 845.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Richard L. Zaffiro* of Wauwatosa, Wisconsin.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney

general, and *Warren D. Weinstein*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

FINE, J.   A jury convicted Lawrence Williams of: one count of attempted first-degree intentional homicide while armed and while concealing his identity, as party to a crime, *see* §§ 940.01, 939.641, 939.32, & 939.05, STATS., seven counts of armed robbery while concealing his identity, as party to a crime, *see* §§ 943.32, 939.641, & 939.05, STATS., and four counts of attempted armed robbery while concealing his identity, as party to a crime, *see* §§ 943.32, 939.641, 939.32 & 939.05, STATS. He appeals, claiming that his custodial statements were elicited by the police in violation of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and were not voluntary. He also contends that the trial court erred in dismissing an extra juror after the evidence in the case was closed but before the jury started its deliberations. We affirm.

## I.

The specific facts underlying Williams's crime spree are not material to this appeal. He was arrested and questioned periodically over the course of twenty-five hours. He gave three statements. The trial court held a pre-trial hearing on Williams's motion to suppress those statements. Detectives who took the statements from Williams testified at the hearing, as did Williams and a cousin. Williams told the trial court that the officers interrogated him despite his request for a lawyer, and that they threatened him, both physically and verbally. His cousin testified that he was at the police administration building, where he, too, was

being questioned, when he heard Williams say that he wanted a lawyer and did not want to answer any questions. He also testified that he heard Williams tell the officers who were interrogating him to " 'Get off me.' "

The detectives' testimony contradicted that of Williams and his cousin. Specifically, they testified that they advised Williams of his rights under *Miranda*, that he did not request a lawyer, and that he voluntarily spoke with them. They also denied abusing or threatening him in any way.

The trial court found that the detectives were credible witnesses, and that Williams and his cousin were not. The trial court opined that Williams's cousin was "lying through his teeth," and that Williams was "totally unbelievable." The trial court found that the detectives complied with *Miranda*, did not threaten or abuse Williams, that Williams did not ask for a lawyer, and that Williams's statements were voluntary. Additionally, the trial court found that although the interrogation was over a twenty-five hour period, there were three questioning sessions with significant breaks between them, during which Williams slept. The trial court also noted that the "record is replete with the defendant being given every opportunity to take a break for the bathroom or take a break to just kind of relax a little bit or a break to get something to eat," which, the trial court noted, included a "burger and fries and soda on one occasion" rather than the traditional "baloney and cheese sandwiches." The trial court denied Williams's motion to suppress his statements.

After the evidence in Williams's trial was closed, but before the trial court instructed the jury, the prosecutor told the trial court and Williams's lawyer that one of the jurors had not answered honestly questions

that were asked during *voir dire*. Specifically, the trial court had asked the venire panel whether any of them had been "charged with having a gun or carrying a gun or arrested for carrying a gun or using a weapon in any way whatsoever." No one responded. The trial court later asked the panel if anyone had a "bad experience with police officers or deputy sheriffs or somebody involved with law enforcement." No one responded. The trial court also asked whether any member of the panel had either "ever been mistreated by police officers" or had been "charged with something" that the panel members believed they "should not have been charged with." No one responded to these questions either. Later, the prosecutor asked the panel twice whether any of them had ever been convicted of a crime. The juror did not respond. The prosecutor told the trial court that the juror was convicted of carrying a gun as a concealed weapon in 1989, and had some nine arrests on his record. When asked about this the next day, the juror admitted the conviction, but indicated that he felt it was something he did not believe he had to disclose because, in a recent trial for disorderly conduct and battery, at which he was acquitted, he was told, presumably at the hearing required by RULE 906.09, STATS., that "after so many years they say you don't need to mention it." The juror also admitted to having pending charges of criminal damage to property, criminal trespass to dwelling, battery, endangering safety by use of a dangerous weapon, disorderly conduct and obstructing an officer.

After hearing the juror's explanations, and over Williams's objection, the trial court granted the State's motion to dismiss the juror. The trial continued with the remaining twelve. The trial court noted that in addition to not responding accurately to the *voir dire*

questions, the juror had also delayed the trial by being late "about four or five days in a row." The trial court further explained:

> One, we don't need a thirteenth juror any more. Number two, he's been consistently late, inappropriate in terms of his conduct towards this Court by being late and delayed our efficiency of the court, and three, because he was not completely honest and truthful and complete in his answers during voir dire and four, there is serious concerns [*sic*] that he may have tremendous difficulties with dealing with police and law enforcement authorities; lawyers, judges, et cetera.

## II.

A.   *Williams's statements.*

■

Although the trial court ruled that the State proved beyond a reasonable doubt that the detectives complied with *Miranda* in their interrogation of Williams, and that Williams's statements were voluntary, the correct burden of proof is by a preponderance of the evidence. That is the standard applicable under RULE 901.04, STATS., which specifically encompasses the "[a]dmissibility of confessions." *See* RULE 901.04(3)(a), STATS. *See also State v. Rewolinski*, 159 Wis. 2d 1, 16 & n.7, 464 N.W.2d 401, 407 & n.7 (1990) (State's burden at suppression hearings is proof by a "preponderance of the evidence"); *State v. Jones*, 192 Wis. 2d 78, 114a, 532 N.W.2d 79, 94 (1995) (*per curiam* on motion for reconsideration) (proof whether law-enforcement officers complied with *Miranda* is by a preponderance of the evidence) (correcting earlier misstatement to the contrary); *State v. Lee*, 175 Wis. 2d 348, 362–364, 499

N.W.2d 250, 256–257 (Ct. App. 1993) (proof of whether waiver of *Miranda* rights was knowing and intelligent is by a preponderance of the evidence).

A trial court's findings of historical fact "will not be disturbed unless they are contrary to the great weight and clear preponderance of the evidence." *State v. Clappes*, 136 Wis. 2d 222, 235, 401 N.W.2d 759, 765 (1987). *See also* RULE 805.17(2), STATS. (trial court's findings of fact not to be overturned on appeal unless "clearly erroneous") (made applicable to criminal proceedings by § 972.11(1), STATS.). We review *de novo*, however, the trial court's findings of constitutional fact—namely, as applicable here, whether a defendant's rights under *Miranda* were respected, and whether any statements given to law enforcement officers were voluntary. *Clappes*, 136 Wis. 2d at 235, 401 N.W.2d at 765. Moreover, although Williams claims, without elaboration, that he was especially vulnerable because, as phrased in his appellate brief, he "was 19 years old at the time of the interrogations, and had recently been a student at an alternative school," whether a defendant's statements to law enforcement are voluntary is determined in the first instance by an analysis of whether there were "improper pressures exercised by the police." *Id.*, 136 Wis. 2d at 235–236, 401 N.W.2d at 765. The inquiry ends if the law enforcement methods were not coercive. *Id.*, 136 Wis. 2d at 239–240, 401 N.W.2d at 767. *See also Shawn B.N. v. State*, 173 Wis. 2d 343, 365, 497 N.W.2d 141, 148–149 (Ct. App. 1992) (absent coercion, that juvenile was thirteen years old and claimed to be emotionally disturbed does not make statements involuntary).

The trial court's findings that the detectives complied with *Miranda* and neither mistreated Williams nor engaged in any other type of coercion are not only supported by the record, but they specifically reflect the trial court's credibility determinations. They are thus not "contrary to the great weight and clear preponderance of the evidence," and we are bound by them. *See Clappes*, 136 Wis. 2d at 235, 401 N.W.2d at 765. These findings lead ineluctably to the trial court's legal conclusion that Williams's rights under *Miranda* were not violated and that the statements he gave were voluntary.

B.  *Dismissal of the thirteenth juror.*

The selection of jurors in criminal cases is, with the exception of the number of peremptory challenges allotted to each party, governed by RULE 805.08, STATS., and RULE 972.01, STATS. RULE 805.08(2), STATS., provides:

> NUMBER OF JURORS DRAWN. A sufficient number of jurors shall be called in the action so that the number applicable under s. 756.096 (3) (b) remains after the exercise of all peremptory challenges to which the parties are entitled under sub. (3). The court may order that additional jurors be impaneled. In that case, if the number of jurors remains more than required at the time of the final submission of the cause, the court shall determine by lot which jurors shall not participate in deliberations and discharge them.

Here, of course, the trial court did not "determine by lot" which jurors would not participate in the deliberations. Rather, before the closing arguments and the trial court's instructions, the trial court dismissed the juror who did not respond truthfully on *voir dire*. Williams argues that this was error. We disagree.

Although a trial court in Wisconsin may not substitute an alternate for a deliberating juror, *State v. Lehman*, 108 Wis. 2d 291, 292, 321 N.W.2d 212, 213 (1982), it "has discretion to discharge a regular juror during trial for cause," *id.*, 108 Wis. 2d at 299, 321 N.W.2d at 216. Failure to respond truthfully to *voir dire* questions is sufficient cause to discharge a juror during the trial. *United States v. Zambito*, 315 F.2d 266, 269 (4th Cir. 1963), *cert. denied*, 373 U.S. 924. Contrary to Williams's contention, specific proof of bias is not required, as it is when a party seeks to overturn an adverse verdict, *see State v. Wyss*, 124 Wis. 2d 681, 726, 370 N.W.2d 745, 766 (1985), *overruled on other grounds*, *State v. Poellinger*, 153 Wis. 2d 493, 451 N.W.2d 752 (1990). *See Zambito*, 315 F.2d at 269. Moreover, a party has no right to insist on the retention of a juror merely because that juror might be biased in the party's favor. *Ibid.*

The exercise of discretion, of course, "contemplates a process of reasoning" based on the facts of record. *Lehman*, 108 Wis. 2d at 300, 321 N.W.2d at 217. In this case, the trial court weighed the appropriate considerations and determined that the integrity of the trial and of the jury deliberation would be advanced if the case was given to the twelve remaining jurors; it was a reasonable decision under the circumstances. The trial court did not erroneously exercise its discretion.

*By the Court.*—Judgment affirmed.