STATE of Wisconsin, Plaintiff-Respondent,

v.

Audrey A. EDMUNDS, Defendant-Appellant.†

Court of Appeals

*No. 98–2171–CR. Oral argument April 15, 1999.—Decided June 24, 1999.*

(Also reported in 598 N.W.2d 290.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Dean A. Strang* of *Fitzgerald & Strang, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Susan M. Crawford*, assistant attorney general.

Before Dykman, P.J., Vergeront and Roggensack, JJ.

ROGGENSACK, J. Audrey Edmunds appeals her conviction of first-degree reckless homicide, pursuant to § 940.02, STATS., based on the death of a seven-month-old infant, who was in her care and died as the result of the "shaken baby syndrome." Edmunds bases her appeal on an allegation of insufficient evidence to prove utter disregard for human life, the admission of a prior bad act, the exclusion of evidence of the child's parents' demeanors, a juror excused during the trial, and a jury instruction. Because we conclude that the evidence was sufficient to prove the utter disregard element of § 940.02, and that no error occurred in regard to the circuit court's evidentiary rulings, juror removal or jury instructions, we affirm the judgment of conviction and the order denying Edmunds's postconviction motions.

## BACKGROUND

Edmunds was the child care provider for a seven-month-old infant, Natalie, who suffered fatal injuries on October 16, 1995. At approximately 7:25 that morning, Natalie was delivered to Edmunds's house by her mother. Earlier in the morning, she had had part of her usual bottle, but she was fussy when she arrived at

Edmunds's house. Natalie's mother attempted to calm her, but James Hennings, who was delivering his own daughter to Edmunds's house for the day, said that Natalie was crying when he arrived. He also reported that Natalie was alert and followed the adults with her eyes, as they moved about the room.

Edmunds testified that after Natalie's mother left, the baby continued to cry and didn't seem to want any more of her bottle, so at approximately 8:00 a.m., Edmunds put Natalie in the master bedroom, propped the bottle in her mouth and left the room to dress her own daughters. She said that when she returned to the bedroom at 8:35 a.m., Natalie was limp and unresponsive. At 8:41 a.m., she called 911, and rescue personnel arrived at 8:44 a.m. Although Natalie was flown to University Hospital, the doctors were unable to save her and she died that night.

At trial, Edmunds denied that she had shaken or struck Natalie. As her defense, she implied that Natalie's parents, Tom and Cindy Beard, had injured their daughter. She pursued her attempt to shift the blame for Natalie's injuries in counsel's opening statement where he asserted that Edmunds was a "good and patient" child care provider of significant experience, who had never done an "unloving" act to a child. Based on this defense, the court permitted the State to introduce evidence of an incident at the Waunakee library where Edmunds hit a one-and-one-half-year old child on the head with a book and then did nothing to console the crying child.

There was also extensive medical testimony about the cause of Natalie's death and the timing of the acts which injured her. An autopsy showed that her head injuries were extremely severe. For example, she had extensive retinal hemorrhaging of both eyes; retinal

72

folds, due to the retinas being torn from the backs of her eyes; bruising on her scalp from an impact injury; and extensive subdural and subaracnoid hemorrhages. The physicians who testified for the State said that her major injuries resulted from "extremely vigorous shaking" and as the result of "severe force," comparable to that exerted in an automobile accident or in falling from a second story window. There was no evidence that the severe injuries Natalie sustained could have been the result of an accident, rather than intentional, forceful conduct, directed specifically at Natalie. At the time she was injured, Natalie was not quite seven months old, weighed twenty-two pounds and was twenty-four inches tall.

## DISCUSSION

### Standard of Review.

In examining the sufficiency of the evidence, we do not substitute our judgment for that of the jury merely because evidence is in conflict or because there is evidence which might have supported a different result. Rather, we review whether the evidence is so insufficient in probative value and force that as a matter of law no jury could have found guilt beyond a reasonable doubt. *State v. Pankow*, 144 Wis. 2d 23, 30, 422 N.W.2d 913, 914 (Ct. App. 1988) (citing *State v. Wyss*, 124 Wis. 2d 681, 693, 370 N.W.2d 745, 751 (1985)). We view the evidence, and all reasonable inferences therefrom, in the light most favorable to sustaining the jury's verdict. *Pankow*, 144 Wis. 2d at 30, 422 N.W.2d at 914, (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

The decision about whether to admit or reject evidence is submitted to the sound discretion of the circuit court. *State v. Alsteen*, 108 Wis. 2d 723, 727, 324 N.W.2d 426, 428 (1982). We will uphold a circuit court's discretionary decision if it examined the relevant facts of record, applied the correct legal standard and reached a conclusion that a reasonable judge could reach. *State v. Gray*, 225 Wis. 2d 39, 48, 590 N.W.2d 918, 925 (1999); *State v. Sullivan*, 216 Wis. 2d 768, 780–81, 576 N.W.2d 30, 36 (1998).

When a claim is made that a defendant's constitutional rights have been violated, we review that claim *de novo. State v. Burton*, 112 Wis. 2d 560, 565, 334 N.W.2d 263, 265 (1983). And, while the specific jury instructions given in any case are within the discretion of the circuit court, we review *de novo* whether those instructions correctly state the applicable law. *State v. McCoy*, 143 Wis. 2d 274, 289, 421 N.W.2d 107, 112 (1988); *State v. Simplot*, 180 Wis. 2d 383, 404, 509 N.W.2d 338, 346 (Ct. App. 1993). Furthermore, whether to dismiss a juror during trial is a matter committed to the sound discretion of the circuit court. *State v. Williams*, 220 Wis. 2d 458, 466, 583 N.W.2d 845, 848 (Ct. App. 1998).

**Utter Disregard.**

Edmunds argues that even if the jury believed she shook Natalie with sufficient force to cause the injuries Natalie sustained, that conduct is insufficient to prove the "utter disregard" element of first-degree reckless homicide for the following reasons: (1) there is no evidence that Edmunds knew shaking would cause such catastrophic consequences for Natalie; (2) shaking is

insufficient conduct to support the utter disregard element; and (3) she called 911 when she saw Natalie was unresponsive.

In order to obtain a conviction under § 940.02, STATS., the State must prove the four elements of first-degree reckless homicide:

1. The defendant caused someone's death;

2. By actions that created "an unreasonable and substantial risk of death or great bodily harm";

3. That the defendant was "aware of that risk"; and

4. The circumstances "show[ed] [the defendant's] utter disregard for human life."

*State v. Blair*, 164 Wis. 2d 64, 70–71, 473 N.W.2d 566, 569 (Ct. App. 1991).

The "reckless" standard in § 940.02, STATS., requires "criminal recklessness," and encompasses the second and third elements of first-degree reckless homicide. *See Blair*, 164 Wis. 2d at 70, 473 N.W. at 569. A person acts with criminal recklessness when he or she " 'creates an unreasonable and substantial risk of death or great bodily harm to another human being and . . . is aware of that risk.' " *Id.* (quoting § 939.24(1), STATS., 1989–90). " 'Recklessness requires both the creation of an objectively unreasonable and substantial risk of human death or great bodily harm and the actor's subjective awareness of that risk.' " *Blair*, 164 Wis. 2d at 70, 473 N.W.2d at 569 (quoting Judicial Council Committee Note, 1988, § 939.24).

The element of utter disregard was first enacted in 1988, effective January 1, 1989. 1987 Wis. Act 399 §§ 472zkco, 3204(57)(ag). The legislative history sur-

rounding the enactment of the utter disregard standard notes that first-degree reckless homicide is "analogous to the prior offense of second-degree murder" that was earlier prescribed under § 940.02(1), STATS., 1985–86. Judicial Council Committee Note, 1988, § 940.02. The standard set in § 940.02(1) for second-degree murder was conduct described as "evincing a depraved mind, regardless of human life." The "depraved mind" language was changed in 1988 to clarify that a mental disorder was not involved in the commission of the crime. *Blair*, 164 Wis. 2d at 69, 473 N.W.2d at 569.

In determining whether utter disregard for human life was proven, we note that the State does not have to prove utter disregard "in fact"; rather, the State satisfies its burden when it proves that the conduct of the defendant and the surrounding circumstances, as generally considered by mankind, are sufficient to evince utter disregard for human life. *State v. Weso*, 60 Wis. 2d 404, 411, 210 N.W.2d 442, 445 (1973). Therefore, we apply an objective standard to the conduct which caused Natalie's injuries. Furthermore, even though there are four elements of the crime of first-degree reckless homicide, it is only the fourth element for which Edmunds claims there was a failure of proof, namely, "circumstances showing Edmunds's utter disregard for human life." [1]

As we explained earlier, the element of utter disregard in first-degree reckless homicide encompasses the same proof requirements as second-degree murder did under the earlier version of § 940.02, STATS., 1985–86; therefore, the second-degree murder cases offer gui-

---

[1] In this appeal, Edmunds conceded criminal recklessness, except for the instruction objection discussed below.

dance about the sufficiency of proof adduced. Utter disregard is proved through an examination of the act, or acts, that caused death and the totality of the circumstances that surrounded that conduct. *See State v. Wilson*, 149 Wis. 2d 878, 895, 440 N.W.2d 534, 540 (1989). In conducting such an examination, we consider the type of act, its nature, why the perpetrator acted as he/she did, the extent of the victim's injuries and the degree of force that was required to cause those injuries. *See id.* We also consider the type of victim, the victim's age, vulnerability, fragility, and relationship to the perpetrator. And finally, we consider whether the totality of the circumstances showed any regard for the victim's life. *See Seidler v. State*, 64 Wis. 2d 456, 465, 219 N.W.2d 320, 325 (1974) (citing *Weso*, 60 Wis. 2d at 410, 210 N.W.2d at 445).

We begin our analysis of Edmunds's contentions by recognizing that utter disregard requires us to apply an objective standard to the conduct which caused Natalie's death. *See Weso*, 60 Wis. 2d at 411, 210 N.W.2d at 445. Therefore, Edmunds's first contention, that there was no evidence that she had personal knowledge that vigorously shaking a twenty-two pound infant could subject her to the risk of serious injury, has no merit. It is not what Edmunds knew in fact, but what a reasonable person in Edmunds's position is presumed to have known that is relevant to the element of utter disregard.

██

Her second contention that vigorous shaking is insufficient conduct to establish utter disregard is equally without merit. Natalie was fussy, crying and refusing to take her bottle or be comforted. The jury could have concluded that Edmunds wanted to quiet Natalie and that her response of vigorously shaking

Natalie was excessive because Natalie's injuries were extremely severe. For example, her retinas had been torn from the backs of her eyes and force similar to falling from a second story window had been applied to her. She could not have sustained the injuries she had with a little jiggling. The jury also heard that Natalie had been subjected to other abuse as well: she had been struck on the head. And finally, Natalie was an extremely fragile and vulnerable victim. She weighed only twenty-two pounds and was twenty-four inches tall. At less than seven months of age, she had no way to protect herself from the severe injuries she sustained. Additionally, Edmunds was an experienced child care provider to whom Natalie's safety had been entrusted.[2] Therefore, we conclude that the jury had sufficient evidence to find that the acts perpetrated against this particular victim evinced an utter disregard for the life of the child.

And finally, while it was a positive act on Edmunds's part to call 911 when she found Natalie was having trouble breathing, that act, in and of itself, when combined with the violence perpetrated against so fragile a victim, did not require the jury to find that Edmunds's conduct had not demonstrated an utter disregard for Natalie's life. Therefore, we conclude there was sufficient evidence presented to the jury to convict Edmunds of first-degree reckless homicide.

## Evidentiary Decisions.

Edmunds contends the circuit court erred when it admitted evidence of a prior bad act and when it did not admit evidence of the demeanors of Natalie's parents

---

[2] A defendant's experience, under some circumstances, may be relevant to an analysis of this objective standard.

at the hospital. We are not persuaded that the circuit court erroneously exercised its discretion in either instance.

### 1. *Prior bad act.*

Prior to trial, the State gave notice that it wished to introduce evidence of an incident which occurred at a library during late 1994 or early 1995, when Edmunds was caring for a child whom she struck over the head with a hard-cover book. Initially, the court denied the State's motion, but after defense counsel asserted in his opening statement that Edmunds was a "good and patient" child care provider and told the jury, "You will hear from no one who ever saw Audrey do an unloving act to a child," the court permitted the testimony.

As a general rule, evidence of prior bad acts is not admissible because of the risk that the jury will find the defendant had bad character in general and then convict him/her of the specific crime being tried, as a punishment for being a "bad person." *Sullivan*, 216 Wis. 2d at 783, 576 N.W.2d at 37. When a claim of circuit court error in regard to the admission of other acts evidence is made, our decision is controlled by §§ 904.04(2) and 904.03, STATS. Under § 904.04(2), the circuit court must examine the listed exceptions, which are illustrative and not exclusive, to determine whether the evidence was offered for a proper purpose, and under § 904.03, it determines whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice. *Sullivan*, 216 Wis. 2d at 781, 576 N.W.2d at 36; *State v. Shillcutt*, 116 Wis. 2d 227, 236, 341 N.W.2d 716, 720 (Ct. App. 1983), *aff'd*, 119 Wis. 2d 788, 350 N.W.2d 686 (1984).

The supreme court has recently clarified the three-part analysis for other acts evidence, which was earlier described in *Sullivan*. That analysis requires the circuit court to examine the following factors: (1) whether the evidence was offered for an acceptable purpose; (2) whether the evidence was relevant; and (3) whether its probative value was substantially outweighed by the danger of unfair prejudice. *Gray*, 225 Wis. 2d at 49–50, 590 N.W.2d at 925. Additionally, the relevance factor has two parts: (a) whether the proffered evidence relates to a fact that is of consequence to the defendant's guilt or innocence; and (b) whether it has a tendency to make the consequential fact more or less probable. *Id.*

Here, the State contends that it offered the evidence to show Edmunds's motive in acting as she did and to rebut the defense Edmunds put forth in opening statement. We agree that motive is a relevant inquiry in determining the utter disregard element at issue here because it helps to explain why Edmunds acted as she did and how extreme the conduct was in relation to the provocation that induced it. *See Weso*, 60 Wis. 2d at 412, 210 N.W.2d at 446. For example, Natalie had been crying on and off for more than thirty minutes; she had refused her bottle and was generally resistant to comforting. The jury could have believed that Edmunds struck her in the head and shook her to change her behavior. The evidence could also have been used to show absence of mistake or accident for the injury Natalie sustained, as the circuit court reasoned.

■

Furthermore, it reasonably could have been offered to rebut defense counsel's assertion in opening statements to the jury that it would hear no testimony that Edmunds had ever done an "unloving" act to a

child. *Shawn B.N. v. State*, 173 Wis. 2d 343, 372, 497 N.W.2d 141, 152 (Ct. App. 1992) (defense counsel may not invite a potential error and then complain about it on appeal); *see also United States v. Robinson*, 485 U.S. 25, 33–34 (1988) (prosecutor should be allowed a fair response to defense counsel's argument). The evidence tended to discredit that defense. And finally, the circuit court could reasonably have concluded it was not unfairly prejudicial. Evidence which is unfairly prejudicial appeals to emotions or the passion of the jury. The description of what occurred at the library did not do so, but it clearly contravened the defense that Edmunds put forth in opening statement. Therefore, we conclude the circuit court did not erroneously exercise its discretion in permitting the testimony.

### 2. *Parents' demeanors.*

Edmunds sought to admit selected evidence regarding Tom and Cindy Beard's demeanors at the hospital. She did so to support her defense that the parents injured Natalie; and therefore, they were not surprised by her injuries when they arrived at the hospital. The State countered that there was also other evidence of demeanor which showed their profound shock and grief. The circuit court ruled that the evidence was not relevant to the charges against Edmunds and could result in confusion for the jury about what the demeanors of Natalie's parents implied. Because the circuit court reviewed the evidence which could be offered by both Edmunds and the State; applied the correct law and came to a conclusion a reasonable court could reach, we conclude it did not erroneously exercise its discretion in limiting this testimony.

**Dismissed Juror.**

██

A circuit court has discretion to dismiss a juror for cause, during the trial. *State v. Lehman*, 108 Wis. 2d 291, 299, 321 N.W.2d 212, 216 (1982). Specific proof of juror bias is not a prerequisite to dismissal. *Williams*, 220 Wis. 2d at 466, 583 N.W.2d at 848 (citations omitted). However, the circuit court must make a record of its reasons for the dismissal. *Id.*

During the trial, the court bailiff brought a juror into the trial judge's chambers while counsel and the judge were informally discussing that juror's previous comments to the bailiff about the case in the presence of other jurors. The trial judge and counsel were all surprised by the juror's presence in chambers. In the presence of counsel, the judge told the juror that he had heard the juror had "made a comment something like you didn't like walking by the evidence table on the way to the jury room, something about a mutiny of the jury or jury mutiny, something about conspiracy, and I don't know the context. . . ."

On appeal, Edmunds objects to the court's questioning of the juror because she was not present. However, no objection was made by defense counsel at the time the questioning was done. Additionally, after the juror had been questioned, the court stated, "Mr. Hurley, your client was certainly welcome to be here and I should have inquired before we started. Does she want to be here?" To which defense counsel responded, "To be honest with you, Judge, I didn't ask her, but I feel real safe speaking for her." After counsel offered to have Edmunds personally waive any objection to not being present at the juror's questioning, the court

stated, "We'll have to clear that up or go through this again."

The following morning, in Edmunds's presence, further discussion was had; the court's bailiff was questioned by the court and both attorneys; and the court permitted each attorney to make whatever record each believed was appropriate. Thereafter, defense counsel took Edmunds out of the room and discussed the issues surrounding the juror with her and then informed the court, "she has informed me that she is willing to waive her presence." The court then asked Edmunds to personally confirm that representation, which she did. Therefore, we conclude that Edmunds waived any irregularity that may have occurred in the court's questioning of the juror outside of her presence.

Additionally, when the court struck the juror, it clearly explained that it was doing so because the juror had conveyed his opinions in the presence of other jurors before he had heard all evidence and in violation of the court's instructions. Again, we conclude that the court reviewed the facts relevant to its decision, applied the correct law and reached a conclusion a reasonable judge could reach. *Williams*, 220 Wis. 2d at 466, 583 N.W.2d at 848. No erroneous exercise of discretion occurred.

**Jury Instructions.**

As a final argument, Edmunds contends that the jury instruction for first-degree reckless homicide was inadequate. In this argument, Edmunds focuses on criminal recklessness, encompassing the second and third elements of first-degree reckless homicide. The jury instructions given for criminal recklessness stated:

The second element requires that Audrey Edmunds caused the death by criminally reckless conduct. This requires that Audrey Edmunds' conduct created an unreasonable and substantial risk of death or great bodily harm to another person and that Audrey Edmunds was aware that her conduct created such a risk.

During the course of its deliberations the jury asked:

The term "aware" in the second point in First Degree Reckless Homicide

Does this "aware" mean that she was aware of what her behavior was doing to [Natalie] at the time of occurance [sic], or just aware of what the reckless behavior could do in general?

The circuit court replied:

"Aware" in Instruction #1022 refers to the issue of whether Audrey Edmunds was aware that her conduct created an unreasonable and substantial risk of death or great bodily harm.

A circuit court exercises wide discretion in framing the instructions a jury will receive in each individual case. *McCoy*, 143 Wis. 2d at 289, 421 N.W.2d at 112. In exercising its discretion, the court must "fully and fairly inform the jury of the rules of law applicable to the case and to assist the jury in making a reasonable analysis of the evidence." *Id.* (quoting *State v. Dix*, 86 Wis. 2d 474, 486, 273 N.W.2d 250, 256 (1979)).

Edmunds asserts that the jury should have been instructed that her awareness of the risk of great bodily harm or death must coincide with the time at which the acts which created the risk occurred, in order for

the jury to convict on first-degree reckless homicide. However, in response to the jury's question, the circuit court had offered to reply that Edmunds had to be "aware at the time that her conduct created" the risk, but defense counsel refused, saying the words "actually and subjectively" must replace "at the time" in the court's suggested reply. On appeal, the "at the time" language seems to be what Edmunds is requesting. The State urges us to apply judicial estoppel[3] to this argument. We choose not to do so; however, because we conclude that the court's instruction and reply in regard to the question about criminal recklessness presented the jury with a fair and full statement of the law and that its interpretation of the jury's question as focusing on the type of risk of which Edmunds had to have awareness in order for the jury to convict was reasonable, no erroneous exercise of discretion occurred.

## CONCLUSION

We affirm the judgment of conviction and the circuit court's order denying postconviction relief because we conclude that the evidence was sufficient to prove the utter disregard element of § 940.02, STATS., and that no error occurred in regard to the circuit court's evidentiary rulings, juror removal or jury instructions.

*By the Court.*—Judgment and order affirmed.

---

[3] Judicial estoppel is applied when a party asserts irreconcilably inconsistent positions at trial and on appeal and the difference is due to a deliberate strategy. *State v. Washington*, 142 Wis. 2d 630, 635, 419 N.W.2d 275, 277 (Ct. App. 1987).