PER CURIAM.
¶1 Steve L. Trattner appeals from an order denying his WIS. STAT. § 974.06 (2015-16)[1] postconviction motion without an evidentiary hearing. The circuit court determined that Trattner's claims were or could have been raised earlier and that Trattner had not shown a sufficient reason for failing to raise them in a prior postconviction motion or appeal. We agree that Trattner's claims are procedurally barred and affirm.
¶2 Trattner killed his wife, Sin Lam, in a physical confrontation. Trattner beat and strangled Lam, moved her body into another room, and covered her with blankets. The next morning he sent their children off to school and went to work. Upon returning home, he placed sleeping pills by Lam's body and called the police. After some initial discussion with police at his home, Trattner agreed to go to the station, where he waived his Miranda[2] rights and gave a full written account of the murder. He claimed that Lam lunged in the direction of a kitchen knife set before he began slamming her head on the floor.
¶3 Trattner was charged with one count of first-degree reckless homicide. He filed a motion to suppress his statements to police. The court conducted a Miranda -Goodchild[3] hearing and ruled that all of Trattner's statements were admissible.
¶4 Trattner pled no contest to the count as charged, without any plea agreement. At the plea hearing, trial counsel explained that he and Trattner had "explored a number of possible factual and legal defenses to the charge, including self-defense, including adequate provocation," but ultimately agreed "he did not have a viable defense to this charge at trial. We view this as a sentencing case." Trial counsel stated:
In addition to that, another consideration is that it was clear to us that if he proceeded to trial the state would file an amended information charging him with first degree intentional homicide. And that's the charge that we would be going to trial on if that were to happen.
At sentencing, the circuit court imposed a bifurcated sentence totaling forty-five years, with thirty-five years of initial confinement and ten years of extended supervision.
¶5 As part of his WIS. STAT. RULE 809.30 direct appeal, Trattner, by Attorney Robert Henak, filed a postconviction motion seeking resentencing or a sentence modification. The circuit court denied the motion and, on appeal, we affirmed the judgment of conviction and order denying postconviction relief. State v. Trattner , No. 2007AP1124-CR, unpublished slip op. (WI App Sept. 3, 2008) (Trattner I ).
¶6 In 2010, Trattner, still represented by Attorney Henak, filed a postconviction motion pursuant to WIS. STAT. § 974.06 seeking to withdraw his no contest plea. He raised two claims. First, he alleged that in entering his plea he did not understand that imperfect self-defense might negate the "utter disregard for human life" element of first-degree reckless homicide. He claimed this possible defense was not explained until this court's subsequent opinion in State v. Miller , 2009 WI App 111, 320 Wis. 2d 724, 772 N.W.2d 188. Second, Trattner alleged that he learned after his direct appeal that police intentionally withheld exculpatory statements made by Mary Behrndt and that the State's failure to disclose this evidence violated due process and entitled him to plea withdrawal. Trattner simultaneously filed another motion alleging that Behrndt's statements constituted a new factor warranting sentence modification. The circuit court denied his motions and we affirmed. State v. Trattner , No. 2010AP1624, unpublished slip op. (WI App Apr. 6, 2011) (Trattner II ).
¶7 On July 5, 2016, Trattner, by new counsel, filed the WIS. STAT. § 974.06 postconviction motion that is the subject of this appeal. Trattner alleged that he was entitled to plea withdrawal due to the ineffective assistance of postconviction counsel. Trattner claimed that Henak should have (1) asserted that trial counsel was ineffective, (2) moved to withdraw Trattner's plea as lacking a factual basis, (3) alleged that the prosecution acted vindictively by withholding Behrndt's statements in order to coerce a plea, and (4) argued that the circuit court improperly failed to engage Trattner in a colloquy concerning his right to testify at the Miranda -Goodchild hearing. After considering the parties' written pleadings and on-the-record arguments, the circuit court took the matter under advisement and issued a written decision concluding that Trattner's newly proffered claims were procedurally barred. Trattner appeals.
¶8 Absent a sufficient reason, a defendant is procedurally barred from raising claims in a WIS. STAT. § 974.06 postconviction motion that could have been raised in a prior postconviction motion or appeal. See § 974.06(4) ; State v. Escalona-Naranjo , 185 Wis. 2d 168, 181-86, 517 N.W.2d 157 (1994). "In some instances, ineffective assistance of postconviction counsel may be a sufficient reason for failing to raise an available claim in an earlier motion or on direct appeal." State v. Romero-Georgana , 2014 WI 83, ¶ 36, 360 Wis. 2d 522, 849 N.W.2d 668. A defendant asserting the ineffective assistance of counsel must demonstrate that counsel performed deficiently and that the deficient performance was prejudicial. Strickland v. Washington , 466 U.S. 668, 687 (1984). To prove deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id . at 688. To prove prejudice, the defendant must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id . at 694. Additionally, "a defendant who alleges in a § 974.06 motion that his postconviction counsel was ineffective for failing to bring certain viable claims must demonstrate that the claims he wishes to bring are clearly stronger than the claims postconviction counsel actually brought." Romero-Georgana , 360 Wis. 2d 522, ¶ 4.
¶9 Whether a successive claim is procedurally barred by Escalona and whether a successive postconviction motion alleges a sufficient reason for failing to bring claims earlier are questions of law this court reviews de novo. Romero-Georgana , 360 Wis. 2d 522, ¶ 30 ; State v. Tolefree , 209 Wis. 2d 421, 424, 563 N.W.2d 175 (Ct. App. 1997). Similarly, whether a WIS. STAT. § 974.06 motion alleges sufficient facts to require a hearing is a question of law that this court reviews de novo. State v. Balliette , 2011 WI 79, ¶ 18, 336 Wis. 2d 358, 805 N.W.2d 334. If the motion does allege sufficient facts, "the circuit court must hold an evidentiary hearing." State v. Allen , 2004 WI 106, ¶ 9, 274 Wis. 2d 568, 682 N.W.2d 433. "However, if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." Id.
Trattner is not entitled to an evidentiary hearing on his claim that postconviction counsel was ineffective for failing to raise the ineffective assistance of trial counsel.
¶10 Trattner alleges that trial counsel provided ineffective assistance by failing to (1) obtain an independent forensic medical examiner's report; (2) properly litigate Trattner's Miranda-Goodchild motion; and (3) perform a meaningful investigation to discover third-party statements which, according to Trattner, would have negated the "utter disregard" element of first-degree reckless homicide. Trattner contends that Henak's failure to raise these claims constitutes ineffective assistance of postconviction counsel sufficient to overcome Escalona 's procedural bar. We conclude that Trattner has failed to demonstrate that trial counsel was ineffective. See State v. Ziebart , 2003 WI App 258, ¶ 15, 268 Wis. 2d 468, 673 N.W.2d 369 (to establish the ineffectiveness of postconviction counsel, a defendant bears the burden of proving that trial counsel's performance was both deficient and prejudicial). Therefore, Trattner has failed to establish postconviction counsel's ineffectiveness and his claims are procedurally barred.
¶11 Trattner first argues that trial counsel performed deficiently by not obtaining an independent forensic examination report. The official autopsy report authored at the time of Lam's death by the Kenosha County Medical Examiner's Office identified the cause of death as "[a]sphyxia due to ligature and/or manual strangulation" and "[b]lunt force injuries to head." After his two prior appeals failed, Trattner, through new postconviction counsel, retained Dr. Jeffrey Jentzen to review portions of the case file. Jentzen wrote a report stating, "It is my opinion that the neck injuries show classic signs of manual strangulation," and "there is extensive blunt force trauma of the head." Jentzen's report opined that "[d]eath was most probably caused by the progressive effects of the closed head trauma." According to Trattner, Jentzen's report suggests a different cause of death and corroborates his initial statements to police.
¶12 The record conclusively shows that trial counsel's failure to obtain another expert opinion was not prejudicial. There was never any dispute that Trattner caused Lam's death, and he never claimed her death was accidental. Both experts came to the same conclusion about Lam's injuries; she was strangled and suffered blunt force head trauma. Trattner admitted that he caused both the strangulation and the head trauma. To show prejudice resulting from ineffective assistance during the plea process, a defendant must demonstrate a reasonable probability that but for counsel's deficiency, the defendant would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart , 474 U.S. 52, 59 (1985). There is no reasonable possibility that Trattner would have evaluated the case differently and insisted on a trial had his attorney found an expert to opine that Lam ultimately died from having her head bashed against the floor by Trattner rather than from his acts of strangulation.
¶13 Next, Trattner asserts that trial counsel provided ineffective assistance at the Miranda -Goodchild hearing by "failing to provide any argument that Trattner's unwarned statements to Mequon Police were custodial for Miranda purposes." His claim is conclusory. Neither Trattner's postconviction motion nor his appellate brief identifies the statements he believes should have been suppressed. To the extent he is arguing that any unwarned statements he made to the police at his home should have been suppressed, Trattner fails to explain why the suppression of such statements would have had any effect on the outcome of his case in light of his written Mirandized confession.
¶14 Additionally, Trattner's claim is undermined by the record. Trial counsel cross-examined the officers at length about what happened before Trattner was Mirandized , and the circuit court made findings and determinations about Trattner's warned and unwarned statements. The circuit court found that during the discussion at his home, Trattner was not restrained in any way and that he exercised freedom of movement. The court determined that "no reasonable person, objectively speaking, in Mr. Trattner's situation would have believed that he was in fact in custody." The court also stated that the initial interview at the station was noncoercive and consisted of collecting biographical and background information until officers read Trattner the Miranda warnings. The court found that after officers Mirandized Trattner, he voluntarily waived his rights and continued answering questions.
¶15 Next, Trattner claims that trial counsel provided ineffective assistance by failing to inform him that he could testify at the Miranda -Goodchild hearing. According to Trattner's postconviction motion, he would have testified
that the demeanor of the MPD officers was, from the moment of the first encounter, one of suspicion and overbearing physical and psychological treatment; the tone of voice and display of authority was such that Trattner believed he had no option but to provide information, and go with officers to MPD headquarters.
¶16 Here again, Trattner has failed to establish prejudice. The circuit court determined that Trattner was not in custody during the initial encounter at his home based on its findings that Trattner "was not restrained in any fashion whatsoever" and "in fact exercised his freedom of movement by getting up on several occasions," and given the "whole context of the interview, if you want to call it that." Assuming that trial counsel should have and did not let Trattner know he could testify, Trattner's nonspecific and conclusory proffer does nothing to undermine the circuit court's findings and conclusions about the admissibility of his unwarned statements.
¶17 Trattner's third claim of ineffective assistance alleges that trial counsel "failed[ed] to conduct any meaningful investigation before advising Trattner to enter a plea of No Contest without a plea agreement." Trattner's theory is that upon further investigation, trial counsel might have discovered that Lam received a potentially upsetting phone call concerning her physical health on the evening of her murder and that third-party witnesses had seen her anxious and upset. Trattner contends that this information makes it more likely that Lam was acting aggressively, which in turn supports his claim of imperfect self-defense.
¶18 The record conclusively demonstrates that Trattner was not prejudiced by trial counsel's failure to pursue the alternate defense strategy now advanced. The affidavits attached to his postconviction motion contain only irrelevant information about Lam's character and behavior that would not have negated the "utter disregard" element of first-degree reckless homicide. Lam's acting anxiously and aggressively does not show that Trattner could have mistakenly believed that repeatedly slamming her head into the ground and strangling her to death were necessary to defend himself. Nor would statements that Lam was acting strangely show that Trattner evinced any regard for her life during or after the assault. Further, the State made clear that it was prepared to charge Trattner with first-degree intentional homicide, which would have carried a mandatory life sentence. There is no reasonable probability that a reasonable defendant would have opted to gamble with a mandatory life sentence at a jury trial based on feeble claims of self-defense and a few statements that his wife was acting strangely before he killed her. See Hill , 474 U.S. at 59.
Trattner is not entitled to an evidentiary hearing on his claim that postconviction counsel should have challenged his no contest plea as lacking a factual basis.
¶19 Trattner claims there was an insufficient factual basis for his plea, namely, the element that he acted with "utter disregard for human life," because he stipulated to the facts from the Miranda -Goodchild hearing rather than to the facts as alleged in the criminal complaint. Trattner's claim is without merit.
¶20 Before a circuit court accepts a guilty plea, it must inquire into the factual basis for the plea to satisfy itself that the defendant actually committed the crime charged. WIS. STAT. § 971.08(1)(b). As long as the court ensures that the defendant understands the elements of the crime and that the defendant's conduct meets those elements, the court is free to establish the factual basis as it sees fit. State v. Black , 2001 WI 31, ¶ 12, 242 Wis. 2d 126, 624 N.W.2d 363.
¶21 Trattner's written statement, an exhibit at the Miranda -Goodchild hearing, provided a factual basis for each and every element of first-degree reckless homicide. The essential elements are: (1) the defendant caused someone's death, (2) "[b]y actions that created an unreasonable and substantial risk of death or great bodily harm," (3) the defendant was aware of that risk, and (4) the circumstances demonstrated the defendant's utter disregard for human life. State v. Edmunds , 229 Wis. 2d 67, 75, 598 N.W.2d 290 (Ct. App. 1999) (citation omitted).
¶22 Trattner's statement establishes that he caused Lam's death by repeatedly bashing her head against the floor and then manually strangling her, either of which creates a substantial risk of death or great bodily harm. Trattner's statement establishes that he killed Lam in a brutal manner that took a long time with only the barest of provocations. Even assuming Lam "lunged" for a knife, any threat was neutralized once she was on the floor. Yet Trattner did not stop. He smashed her head against the floor again and again, and then he strangled her. Afterward, he did not bother to call for help. He assumed Lam was dead and covered her body. Trattner attended a business lunch the next day without bothering to check on Lam. His statements provide an ample factual basis for the court to establish that he acted with "utter disregard for human life." Postconviction counsel was not ineffective for failing to bring this meritless claim.
Trattner is not entitled to an evidentiary hearing on his claim that postconviction counsel should have alleged the prosecution acted vindictively in withholding exculpatory statements to coerce a plea.
¶23 The doctrine of prosecutorial vindictiveness reflects "the basic principle that it is a violation of due process when the state retaliates against a person for exercising a protected statutory or constitutional right." State v. Johnson , 2000 WI 12, ¶ 20, 232 Wis. 2d 679, 605 N.W.2d 846 (citation omitted). Trattner's prosecutorial vindictiveness claim rests entirely on two facts: (1) the State "threaten[ed] to up the ante" by charging him with first-degree intentional homicide and (2) the State did not disclose statements from an acquaintance, Behrndt, asserting that Lam was having an affair in the months leading up to her death and speculating that she might have used cocaine. Trattner claims that his plea was coerced because the State "intentionally withheld" Behrndt's exculpatory statements and threatened to charge him with first-degree intentional homicide.
¶24 Aside from the fact that Trattner's allegations fail to establish the essential component of "retaliation," see State v. Williams , 2004 WI App 56, ¶ 48, 270 Wis. 2d 761, 677 N.W.2d 691 (holding that there was no actual vindictiveness where the prosecutor threatened defendant with additional charges if he insisted on going to trial), this claim has already been adjudicated and Trattner is barred from relitigating it. See State v. Witkowski , 163 Wis. 2d 985, 990, 473 N.W.2d 512 (Ct. App. 1991) ("A matter once litigated may not be relitigated ... no matter how artfully the defendant may rephrase the issue.").
¶25 Trattner's 2010 postconviction motion asserted that Henak had obtained Behrndt's previously undisclosed statements and claimed that the State's failure to provide the statements violated due process and entitled Trattner to plea withdrawal. The motion also claimed that Behrndt's statements bolstered an imperfect self-defense claim that would have negated the "utter disregard" element under Miller . The State admitted that Behrndt's statements should have been turned over but argued the failure to disclose was harmless because the statements contained only the irrelevant information that Lam was having an affair and inadmissible speculation that she might have been using drugs. The circuit court acknowledged that the statements should have been provided, but found that they were irrelevant and would not have led to any discoverable evidence.
¶26 "Rephrasing the same issue in slightly different terms does not create a new issue." State v. Crockett , 2001 WI App 235, ¶ 15, 248 Wis. 2d 120, 635 N.W.2d 673. Trattner's affixing the term "prosecutorial vindictiveness" to the same operative facts does not transform this into a new claim. See Witkowski , 163 Wis. 2d at 990. To the extent Trattner contends that Henak provided ineffective assistance by "weld[ing] the exculpatory evidence claim" to the Miller case, we disagree. Trattner's meritless "prosecutorial vindictiveness" claim is not clearly stronger than the claims raised by Henak in the 2010 postconviction motion.
Trattner is not entitled to an evidentiary hearing on his claim that postconviction counsel should have challenged the circuit court's failure to conduct a colloquy at the Miranda-Goodchild hearing.
¶27 The circuit court did not engage Trattner in an on-the-record colloquy about whether or not to testify at his Miranda -Goodchild hearing. Trattner now claims that postconviction counsel provided ineffective assistance by failing to challenge the absence of a colloquy as part of his direct appeal or prior WIS. STAT. § 974.06 collateral attack. We are not persuaded.
¶28 First, Trattner has not established Henak's deficient performance. He points to no authority requiring the circuit court to conduct a colloquy at a Miranda -Goodchild hearing. Counsel does not perform deficiently by failing to raise a novel claim. See State v. Maloney , 2005 WI 74, ¶¶ 28-30, 281 Wis. 2d 595, 698 N.W.2d 583. Successful ineffective assistance claims "should be limited to situations where the law or duty is clear." Id. , ¶ 29 (citation omitted). See also State v. Thayer , 2001 WI App 51, ¶ 14, 241 Wis. 2d 417, 626 N.W.2d 811 (counsel is not required to argue a point of law that is unclear).
¶29 Second, Trattner has shown no prejudice from this alleged deficiency. As explained previously in the context of Trattner's related ineffective assistance of trial counsel claim, his proffer, even if true, does not establish that his statements to law enforcement were custodial or involuntary. Trattner's subjective, self-serving statements that he believed he was obligated to respond to police questions and that he "was never again going to be permitted freedom of movement" are conclusory and unconnected to a single fact explaining why. Moreover, Trattner does not even attempt to show that the officers' "demeanor," which he admits was "polite," outweighed his ability to resist their questions. See State v. Clappes , 136 Wis. 2d 222, 236-37, 401 N.W.2d 759 (1987). His proffered testimony does not establish either custody or coercion.
Trattner is not entitled to a new trial based on the sum of counsel's errors or in the interest of justice.
¶30 Trattner contends that the cumulative effect of trial counsel's errors and postconviction counsel's errors entitles him to a new trial. We are not persuaded. As to each of Trattner's individual claims, we determined that neither trial nor postconviction counsel provided ineffective assistance. Consequently, the "cumulative effect" of his counsels' alleged errors amounts to nothing. "Zero plus zero equals zero." Mentek v. State , 71 Wis. 2d 799, 809, 238 N.W.2d 752 (1976).
¶31 Finally, Trattner seeks to withdraw his plea in the interest of justice. Under WIS. STAT. § 752.35, this court has authority to grant a new trial in the interest of justice if it appears that (1) the real controversy has not been fully tried or (2) it is probable that justice has for any reason miscarried. Reversal in the interest of justice is exercised infrequently and reluctantly, see State v. Avery , 2013 WI 13, ¶ 38, 345 Wis. 2d 407, 826 N.W.2d 60, and only "in exceptional cases," see State v. Kucharski , 2015 WI 64, ¶ 23, 363 Wis. 2d 658, 866 N.W.2d 697.
¶32 Trattner argues that the real controversy was not fully tried. He must show either "that the jury was precluded from considering important testimony that bore on an important issue or that certain evidence which was improperly received clouded a crucial issue in the case." State v. Darcy N.K. , 218 Wis. 2d 640, 667, 581 N.W.2d 567 (Ct. App. 1998) (citation omitted). He can show neither; he pled no contest. Further, Trattner has not shown anything "exceptional" about his case that would warrant discretionary reversal. Rather, he simply rehashes his earlier claims of ineffective assistance of postconviction counsel. See State v. Arredondo , 2004 WI App 7, ¶ 56, 269 Wis. 2d 369, 674 N.W.2d 647 (2003) (an interest-of-justice claim fails if it merely rehashes arguments that the court has rejected).
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Miranda v. Arizona , 384 U.S. 436 (1966).

A circuit court holds a Miranda -Goodchild hearing to determine whether a suspect's rights under Miranda , were honored, and also whether any statement the suspect made to the police was voluntary. See State ex rel. Goodchild v. Burke , 27 Wis. 2d 244, 133 N.W.2d 753 (1965).